Argued December 11, demurrer overruled December 28, 1915.
Rehearing denied January 18, 1916.

## PETERSON *v.* LEWIS.

(154 Pac. 101.)

**Amicus Curiae—Effect on Proceedings in Making Such Appearance.**

1. In a *mandamus* proceeding in the Supreme Court, where briefs
are filed, oral arguments made by counsel appearing as *amicus curiae*
in the interest of the state highway commission, in which proceeding
the duties devolving upon the state engineer are involved and sought
to be regulated, the interest of the commission will be considered the
same as if it had been made a party to the proceeding.

**Mandamus—Under What Circumstances the Writ will Issue—Con-
struction of Contracts.**

2. Where the law imposes an obligation on a particular person to
perform some particular act, and no other specific remedy is provided

for, *mandamus* is the proper remedy, and the remedy may be applied to compel the performance of a contract that involves an official duty, though it will not lie to enforce private contracts.

### Highways—Duties of State Engineer in Construction of Highways—"Persons Interested."

3. The title of the act of 1913, Laws of 1913, page 663, sets forth its objects and purposes, and provides that the state highway engineer shall render assistance to the several County Courts and highway officers in the construction of roads. Under Section 6 of the act it is made the duty of the state engineer to furnish such information and advice as may be requested by persons interested in the construction and maintenance of public highways, and a contractor constructing a highway pursuant to a contract with a county is an "interested person," and is entitled to the information.

### Highways—Duties of State Engineer in the Construction of County Roads.

4. Under the provisions of Section 6 of the act of 1913, Laws of 1913, page 663, requiring the state highway engineer to act as adviser for and co-operate with the county authorities having in charge the building of county roads, when called upon so to do, even to such an extent as will carry into execution the plans adopted by him, following the policy initiated by the federal government in the construction of sample county roads, requires active co-operation on the part of such engineer, and not mere casual advice on building public county roads.

### Mandamus—Compelling Performance of Official Duties.

5. The state highway engineer is required under the act of 1913, Laws of 1913, page 663, to provide information to the contractor and render assistance to the county authorities, and, among other things, is to furnish a final estimate of the work done on the contract, and where he fails or refuses, may be compelled to furnish such final estimate by *mandamus*.

[As to *mandamus* to compel performance of duty of official, see note in 125 Am. St. Rep. 493.]

### Statutes—Title and Subject Matter—Validity.

6. The legislature of 1913, Laws of 1913, page 663, passed an act creating the office of state highway engineer, and prescribed what his duties were. The county court of Clatsop County and plaintiffs entered into a contract whereby the latter agreed to build and did construct certain roads, such contract specifying that the state highway engineer was to make a final estimate of the work performed thereunder and the value of said work, and that after approving the estimate so prepared the county was to pay for the work. After the contract was entered into, and before the completion of the work, the legislature of 1915, Laws of 1915, page 537, passed a law entitled, "An act abolishing the office of state highway engineer," etc., and providing that the duties performed by such officer be transferred to the state engineer, and further providing for the appointment of a deputy state engineer by the chairman of the state highway commission, and that such deputy shall be qualified and versed in scientific road building, and shall perform the duties prescribed by the state highway commission, and fixes his salary and provides for expenses. *Held,* that

Laws of 1915, page 537, Section 3, was void as being repugnant to the title of the act, under Article IV, Section 20, of the Constitution.

### Mandamus—Parties—"Deputy" to Act Only in Behalf of His Principal.

7. The act creating the office and prescribing the duties of the state highway engineer, Laws of 1913, page 663, were amended by Laws of 1915, page 537, transferring those duties to the state engineer and requiring such duties to be performed by his deputy. A proper performance of the duties required by the act could be enforced by *mandamus* against the state engineer, for the reason that the deputy state engineer was not an independent officer, but acted only on behalf of his principal.

### Statutes—Construction of a Partial Invalid Statute.

8. In construing a statute, the rule is to give such a meaning, if possible, as will render it valid and effectuate the will of the legislature, and where a part of an act is valid and conforms to the policy and intent of the legislature, it is not rendered unconstitutional by a later section that is repugnant and void to this policy and intent, and in such a case the statute is void only as to that section.

### Constitutional Law—Legislative Power Cannot be Delegated.

9. Under Article IV, Section 1, of the Constitution, the attempt of the state highway commission to delegate the duties imposed by statute upon the state engineer is void and of no effect whatever, for the reason that legislative power cannot be delegated to a commission.

### Highways—Statutes Relating to Their Construction.

10. Under statutes relating to the construction of highways, it is the duty of the state engineer to furnish the county authorities a final estimate of the work done, and whether or not the road is completed, and the amount due the contractor under the contract, all of which is a part of the construction work of such highway.

### Statutes—Duty of State Engineer in the Construction of Highways and State Roads.

11. The act of 1913, Laws of 1913, page 663, as amended by Laws of 1915, page 537, provides that the state engineer is substituted for the state highway engineer, and all duties prescribed by the statutes referred to pertaining to said official shall be performed by the state engineer, including the duty of assisting the highway commission in the construction of state roads.

Original proceeding in Supreme Court.

In Banc.    Statement by MR. JUSTICE BEAN.

This is an original proceeding in *mandamus* brought by the plaintiffs Peterson and Johnson against John H. Lewis, state engineer, to require defendant as such officer to make and deliver to the petitioners and to the County Court of Clatsop County, Oregon, a final

estimate of the work done by them, and the value thereof, under their contract with the county of December 18, 1914, for the construction of a certain county road therein extending from the City of Astoria to the west line of Columbia County. The alternative writ asserts the following facts: The contract provided that the work should be done according to the plans, specifications and schedule of rates, prices and maps of the road which were prepared by the state highway engineer, and that all the work thereunder should be done under the supervision of the field engineer selected by the state highway engineer; the work, however, to be approved and accepted by the latter. The contract further provided that payment for the work done by the contractors should be by warrants of Clatsop County issued upon vouchers of the state highway engineer approved by the County Court, out of any money on hand from the sale of its permanent road bonds, or after January 1, 1915, by warrants drawn on the general fund of that county. Further provision was made for the making of partial payments during the progress of the work upon estimates of the engineer in immediate charge thereof, and the contract contained the following:

"The state highway engineer shall, as soon as practicable after the completion of this contract, make a final estimate of the amount of work done thereunder, and the value of such work, and Clatsop County shall, at the expiration of 35 days from and after such estimate is so made, and is approved by the County Court of Clatsop County, pay the entire sum so found to be due hereunder after deducting therefrom all previous payments and all amounts to be retained under the provisions of this contract. All prior partial estimates and payments shall be subject to correction in the final estimate and payment."

The road referred to is one which was constructed by the county mentioned with funds derived from the issue and sale of its bonds under Chapter 103 of the General Laws of Oregon for 1913, pursuant to the vote of the taxpayers of the county. The County Court requested the assistance of the state highway engineer in the matter of the construction of the road under the terms of Chapter 339 of the General Laws of 1913, page 663, providing for the appointment and prescribing the duties of the state highway engineer. The contract was executed pursuant to such arrangement. The contractors began the work thereunder soon after its execution, and, except for temporary suspensions, prosecuted the same until September 4, 1914, when it was finished. According to the terms of the contract, the field engineer in charge of the work furnished the contractors with preliminary estimates from time to time during the progress of the work. Based upon these estimates, the contractors were paid installments from time to time; the theory of the contract being that, after the completion of the work, the state highway engineer himself should give to the contractors a final estimate showing the amount of work done and the value thereof, correcting all errors in the preliminary computations in order to determine the balance due the contractors. The state highway engineer performed the duties of the engineer under the terms of the contract, which were requested by the County Court, until May 22, 1915. Thereafter they were performed by a chief deputy state engineer until August 27, 1915, when the highway commission passed an order purporting to relieve the defendant of all duties and responsibilities in connection with the highway work of the State of Oregon. Thereupon the appointment

of the chief deputy state engineer was revoked by the state engineer.

The petition for the writ alleges that Chapter 337 of the General Laws of 1915 imposed upon the state engineer, an elective officer, the duties previously performed under the contract and law by the state highway engineer by virtue of Chapter 339 of the General Laws of 1913, and that the former is the only officer or person authorized by law or the contract to make such final estimate; further, that although more than 80 days have elapsed since the date of the completion of the work, the state engineer has failed and refused to make or deliver to the contractors, or to the County Court of Clatsop County, the final estimate made necessary by the contract before the contractors can enforce any claim for final settlement against the county. The defendant demurred to the writ upon the ground that it does not state facts sufficient to constitute a cause of action.          Demurrer Overruled.

For plaintiffs there was a brief over the name of *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Harrison Allen.*

For defendant there was a brief and an oral argument by *Mr. G. W. Allen.*

As *amici curiae* there was a brief with oral arguments by *Mr. Charles L. McNary* and *Mr. John L. McNary.*

Mr. Justice Bean delivered the opinion of the court.

1. It is claimed by defendant that the highway commission by an order relieved the state engineer of all duties and responsibilities in connection with the highway work, and provided that it should be done by I. E.

Cantine, chief deputy state engineer. On account of the action taken by the commission, the state engineer endeavors to assume a neutral attitude in the premises. Counsel have appeared as *amici curiae,* made oral argument in the interest of the highway commission, and also filed a brief. The interest of the commission should be considered to the same extent as though it were a party to this cause. It is contended by the petitioners that under Chapter 339 of the Laws of 1913, the duties to be performed by the state engineer are separate and distinct from those which that act requires him to perform in connection with the state highway commission; that he is authorized and required by law to act for the various counties of the state in the capacity of an engineer in the matter of road construction; that he, having been substituted for the state highway engineer, is the only officer recognized by the law or the contract to perform these functions. It is suggested on behalf of the defense that the plaintiffs are not entitled to the benefit of the writ, for the reason that the duty, if it exists, is a contractual one and not imposed by law.

2. The writ lies to compel the performance of an act which the law imposes as a duty resulting from an office, trust or station. Whenever the law gives power to or imposes an obligation on a particular person to do some particular act or duty, and provides no other specific remedy, for the performance thereof, the writ will issue. Duties of this kind need not be specifically stated in the law. If they are imposed by implication from a fair, reasonable construction of the law, it is sufficient. It is not necessary that they be imposed by law on the individual in question, provided he has put himself in the position from which by law the duties accrue: Merrill, Mandamus, § 13. By the same author-

ity (section 16), since the object of the writ is to enforce duties created by law, it will not lie to enforce private contracts, unless it is extended to such cases by statutory enactment. Where, however, a contract involves an official duty, the rule is otherwise, since that is one of the grounds for the issuance of the writ.

It is maintained by counsel in behalf of the highway commission that the chief deputy state engineer is an independent officer, upon whom, if anyone, the alleged duty rests. These questions require a construction of the statutes of 1913 and 1915. First. What were the duties of the highway engineer in the premises, under the provisions of the act of 1913? As we go along it will be well, in the same connection, to note to some extent the general purpose and scope of the act in order to keep in mind the legislative object and intent. The title indicates that its objects and purposes are: (1) To create a state highway commission, defining the duties thereof, and making provision for the payment of expenses while engaged in the performance of such duties; (2) to create the office of state highway engineer, provide for the appointment of such officer, prescribe his duties, fix his salary, provide for the conduct of subordinates in, and payment of expenses of, his office; (3) to prescribe the duties of the county courts and other county officials in relation to the purposes of the act; (4) to provide for the creation of a state highway fund, the levying of a tax to create the same, and the use and disbursements thereof; (5) to provide for the employment of convicts on roads; and (6) to make an appropriation for carrying out the purposes of the act. By this chapter the state highway commission is created, and provision is made for the appointment of a state highway engineer who shall be versed in scientific road construction. Viewing this statute from a

general standpoint, it appears that a scheme was inaugurated for the construction of roads by the state and its counties working in unison, in order that state and county roads may eventually connect and form a continuous highway. In order to accomplish this, the act provides that the state highway engineer shall render assistance to the several County Courts and highway officers in promoting highways and in the improvement and construction of roads. As a matter of reciprocity, it enjoins upon the latter and other county highway officers the duty of furnishing the former, upon his written request, with all available information in connection with the building and maintenance of public highways and bridges in their respective localities: See Section 7. Section 4 of the act directs that the engineer shall act in an advisory capacity to the County Courts of the different counties in the matter of road construction and maintenance whenever requested so to do. This section further specifically provides:

"Upon request of the County Court of any county said engineer shall furnish specifications for any piece of proposed road construction in such county upon being furnished the necessary information and data to enable him to prepare such specifications; and such specifications shall be so furnished free of all costs to such county."

The latter part of Section 6 is as follows:

"Said engineer may be consulted at all reasonable times by the county officers having care and authority over highways, culverts and bridges, and shall advise such officers relative to the construction, repair, alteration or maintenance of the same, and shall furnish such other information and advice as may be requested by persons interested in the construction or maintenance of public highways, and he shall at all times lend his

aid in encouraging and promoting highway improvements throughout the state. Said engineer shall cooperate with all highway officers, and shall assist county authorities in all matters pertaining to the construction of roads when called upon to do so by the County Court.''

Separate and apart from the duties of the engineer relating to the construction of state roads, and the like, as prescribed by the state highway commission, it is plain that the legislature imposed upon that officer the duty of furnishing plans and specifications for proposed road construction, upon the request of the proper County Court, and necessary information and data therefor. Such plans, etc., are to be kept on file in his office. By the terms of the statute this assistance is to be rendered ''free of all costs to such county.'' The engineer is directed by law to advise such officers relative to the construction or maintenance of highways and bridges and to furnish such other information and advice as may be requested by ''persons interested'' in such work. It would seem that persons constructing a highway pursuant to a contract with a county would certainly be interested in such undertaking within the meaning of the statute. Evidently the lawmakers believed that the information and advice provided for would avail nothing unless in case of road contracts it were extended to the contractor and carried out in the construction of the thoroughfare.

4. Not only is the engineer to advise, but Section 6 immediately specifies that he shall co-operate with and assist, county authorities in such matters when called upon to do so, following the policy initiated by the federal government in superintending the construction of certain county roads as samples. The law does not contemplate mere casual advice by the engineer, but

rather that he shall on appropriate occasions act in an advisory capacity in building public county roads to an extent sufficient to carry into execution the plan which he has made. It provides for rendering valuable aid to counties in the improvement of public roads with the apparent object of attaining a symmetrical system of highways. An annual tax is ordained to be levied and an appropriation made to effect the purpose of the law. In consonance with the spirit and letter of the statute, the highway engineer made plans, specifications and estimates for the work which were embraced in and made part of the contract with the plaintiffs, by the terms of which under the law that official was made the arbiter of the work in the first instance. In short, pursuant to the statute, he assumed the duties of engineer in the construction of the highway.

5. In the furtherance of the contract and the carrying out of the purpose of the act, that law imposes the duty upon the engineer to provide information for the contractor and render assistance to the county authorities by furnishing a final estimate of the amount of the work done by the petitioners under the contract; therefore the writ is an appropriate remedy to require the proper officer to perform such function: *Wren* v. *Indianapolis*, 96 Ind. 206; *Conn* v. *Board of County Commrs.*, 151 Ind 517 (51 N. E. 1062); *People ex rel. Peck* v. *Buffalo State Asylum*, 8 N. Y. Supp. 396; *State* v. *Holliday*, 8 N. J. Law, 205.

6, 7. This brings us to the difficult problem of ascertaining upon whom the duty mentioned rests. In 1915, the legislature, adopting a policy of consolidation of commissions and offices, enacted Chapter 337 of the General Laws of Oregon, page 537. The title of the act is as follows:

"An act abolishing the office of state highway engineer as defined by Section 3 of Chapter 339 of the Session Laws for 1913, and transferring and conferring the powers, duties and work of the state highway engineer upon the state engineer, and providing for the appointment of a deputy in the office of the state engineer who shall be versed in scientific road construction, and fixing his compensation."

Section 1 provides that the office known as the state highway engineer, as defined by Section 3 of Chapter 339 of the Session Laws of 1913 is hereby abolished, and the powers, duties and work now performed by the state highway engineer shall be vested in and placed under the charge and direction of the state engineer, and, wherever in any law now in force in the State of Oregon the name "state highway engineer" appears, it shall be considered that the name "state engineer" is substituted in lieu thereof. Section 2 directs that all records, maps, drafts and furniture relating to the work and business of the office of state highway engineer shall be transferred and lodged with the state engineer. Section 3 ordains that the chairman of the state highway commission may appoint one chief deputy in the office of the state engineer, who shall be versed in scientific road construction and duly qualified to act as such, and who shall serve at the pleasure of the chairman of the state highway commission, and whose duties shall be such as prescribed by the state highway commission. That section also fixes his salary and provides for expenses.

Thus far there is little difficulty or contention as to the meaning of the statutes in question. Apparently after the drafting of the original bill, by an amendment there was added to Section 3 of the act the following:

"All work in the department which has heretofore been in the charge of the state highway engineer shall

be under the direct supervision of said chief deputy state engineer; and such additional deputies and assistants as the state highway commission shall deem necessary in said road department, shall be appointed by said chief deputy state engineer subject to the approval of the chairman of the state highway commission.''

It is the contention of the plaintiffs: (1) That the state engineer is the only officer recognized by the law or the contract to perform the duties mentioned; (2) that all that portion of the act of 1915 which attempts to impose upon the chief deputy state engineer the work in the department formerly done by the state highway engineer is void under Article IV, Section 20, of the Constitution, in that the act embraces a subject which is not included in the title, namely, that having reference to the performance of the work in question by the chief deputy, who was designed as a deputy for the state engineer to be answerable to him in the true sense of that term.   On behalf of the commission it is contended that:

''Those duties defined by the earlier law remain unimpaired, but the duties which were originally cast upon the state highway engineer by prescription from the state highway commission are no longer to be exercised by the state engineer, but are transferred, by the power of Chapter 337 of the Laws of 1915, upon the deputy engineer because the law requires him to be versed in scientific road construction.''

In its final analysis the position taken in opposition to plaintiffs is that the chief deputy state engineer is an officer entirely independent of the state engineer. The latter part of Section 3 quoted above is in direct conflict with the title of the act, and if given literal force, instead of merging the office of highway engineer with that of state engineer, according to the

clearly expressed legislative intent, the effect of Chapter 337 would be merely to change the title of the state highway engineer. Such provision is not within the scope of the title of the act. The title of an act defines its scope. It can contain no valid provisions beyond the range of the subject there stated: Sutherland, Stat. Const., § 145. See, also, *State* v. *Levy,* 76 Or. 63 (147 Pac. 919); *State* v. *Perry,* 77 Or. 453 (151 Pac. 655).

8. We understand it to be a governing rule of construction to give a statute such a meaning, if possible, as will render it valid and effectuate the will of the lawmakers as expressed: *Schaedler* v. *Columbia Contract Co.,* 67 Or. 412 (135 Pac. 536); *Kansas P. Ry. Co.* v. *Commissioners,* 16 Kan. 594. It is a rule of statutory construction that, where the first section of a statute conforms to the obvious policy and intent of the legislature, it is not rendered inoperative by unconstitutional provisions in a later section which do not conform to this policy and intent. In such case the later provision is nugatory and will be disregarded: Section 20, Article IV, of the Constitution; Endlich, Interpretation of Stat., § 183; *State* v. *Bates,* 96 Minn. 110 (104 N. W. 709, 113 Am. St. Rep. 612); *McCormick* v. *West Duluth,* 47 Minn. 272 (50 N. W. 128). The latter part of Section 3 of Chapter 337, above quoted, is repugnant to Article IV, Section 20, of the Constitution, which provides that:

"Every act shall embrace but one subject, and matters properly connected therewith, which subjects shall be embraced in the title. And if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title": *Clemmensen* v. *Peterson,* 35 Or. 48, 49 (56 Pac. 1015); *Spaulding Log. Co.* v. *Independence Imp. Co.,* 42 Or. 397 (71 Pac. 132); *Simon* v. *Northup,* 27 Or. 505 (40 Pac. 560, 30 L. R. A. 171).

Therefore the latter part of Section 3 does not relieve the state engineer of the duty thrust upon him by the two acts, nor make the chief deputy an independent official. On the other hand, it would seem that, after two years' experience, it was deemed wise by the legislative branch of the state government to so change the *modus operandi* relating to the highway engineer as to provide that the work of that officer should be subject to the supervision of another skilled civil engineer; the object being the centralizing of the responsibilities as recommended in the message of the governor appertaining to that subject, in order to secure a higher state of efficiency and promote economy. That the chief deputy is subordinate to the state engineer is indicated by the words "chief deputy state engineer," as well as by the provisions of Sections 1 and 2 of the later act. A "deputy" is defined in 13 Cyc. 1043, as follows:

"One appointed as the substitute of another, and empowered to act for him in his behalf or on his behalf; one who is appointed, designated or deputed to act for another; one who occupieth in right of another; and for him regularly his superior will answer; one authorized by an officer to exercise the office or right which the officer possesses, for and in place of the latter; one who by appointment exercises an office in another's right; one who exercises an office, etc., in another's right having no interest therein, but doing all things in his principal's name, and for whose misconduct the principal is answerable."

To the same effect is 3 Words and Phrases, page 2008.

9. The statute referred to imposes upon the state engineer the duties enumerated in Chapter 339 of the Laws of 1913. That official is responsible to the state and parties coming within the terms of the act. The chief deputy state engineer is answerable to his su-

perior. "No man can serve two masters." Any other arrangement in the premises would naturally lead to chaos and produce confusion. The state engineer cannot be relieved of the trust reposed in him by the statute, except by the expressed will of the lawmakers, and the order of the highway commission of August 27, 1915, did not have that effect. Legislative power cannot be delegated to a commission: Section 1, Article IV, of the Constitution; Sutherland, Stat. Const. (2 ed.), Section 93; *State* v. *Orange,* 60 N. J. Law, 111 (36 Atl. 707).

10. The determination of whether or not a road is completed, and the amount due for the construction thereof, is as much the carrying into execution of the statute as the enforcement of any of its other provisions. Roads cannot be constructed without compensation.

It being the statutory duty of the state engineer to furnish the required certificate and information, the plaintiffs are entitled to the relief prayed for; otherwise they might be remediless and justice be defeated.

It follows that the demurrer to the writ must be overruled, and it is so ordered.     Demurrer Overruled.

Mr. Justice Eakin did not sit.

***

Denied January 18, 1916.

On Petition for Rehearing.

(154 Pac. 106.)

In Banc.     Mr. Justice Bean delivered the opinion of the court.

11. The petition for rehearing suggests a further ruling as to the working force of Chapter 339 of the Laws

of 1913, as amended by Chapter 337 of the Laws of 1915. The ''state engineer'' being substituted for the ''state highway engineer'' by the later act, there can be no question but that all the duties coming within the purview of the statute would devolve upon the state engineer, and for this reason the enactment of 1915 provides the assistance of a deputy for that official. It also subjects the state engineer to the duty of responding to the requisitions of the highway commission in the matter of the construction of state roads. These additional explanations cover all the interrogatories submitted by the petition, in so far as they pertain to the issues raised in this proceeding.

Other points are ably argued, but are not involved in the litigation, so as to authorize this court to adjudicate the same. With this explanation, a rehearing will be denied. DEMURRER OVERRULED. REHEARING DENIED.

MR. JUSTICE EAKIN took no part in the consideration of this case.