STATE, APPELLANT, *v.* JOHNSON, RESPONDENT.

(No. 5,789.)

(Submitted January 8, 1926. Decided January 26, 1926.)

[243 Pac. 1073.]

*Automobiles—Commercial Use—Licenses—Constitutionality of Act—Statutory Construction—Police Power—State Railroad Commission—Powers—Information—Surplusage.*

Constitution—Nature of Instrument—Power of Legislature.
    1.   The state Constitution is not a grant of but a limitation upon legislative powers; hence the legislative assembly has all legislative power except such as has been delegated to Congress and such as is expressly or impliedly withheld by the state Constitution.

Automobiles—Motor Vehicle Transportation Act—Constitutionality.
    2.   *Held*, that Chapter 154, Laws of 1923, in granting the state railroad commission power to impose reasonable rules and regulations for the conduct of the business of motor vehicle transportation of persons or property for compensation and to determine matters of

---

2. Jurisdiction of public service commission over carriers transporting by motor trucks or busses, see note in 1 **A. L. R.** 1460.

detail in carrying out the legislative will in enacting the measure, neither violates section 1, Article IV of the Constitution, prohibiting the exercise of powers reposed in one department of government by either of the other two, nor the fundamental principle of constitutional law which prohibits the legislature from delegating its power to any board or commission.

Same—Highways — Right of Operator of Commercial Vehicles not a Vested Right—Constitution.

3. While every person has the right to travel upon the public highway and transport his property thereon, use of it for the purpose of carrying on the business of motor vehicle transportation is not a vested right but a mere privilege or license which the legislature may grant or withhold in its discretion, or grant upon such conditions as it sees fit to impose; hence Chapter 154, Laws of 1923, regulating such business, is not open to the constitutional objections that it takes private property for public use without due process of law, or denies to the people the right of enjoying their property.

Same—Exemptions—Construction of Act—"Must" for "May."

4. Only persons who operate motor vehicles on a commercial basis come within the regulatory provisions of Chapter 154, above, and under them persons residing in rural communities occasionally carrying passengers or freight for or without compensation and not as a regular business are exempted; hence the proviso in subdivision (e) of section 1 of the Act, that the public service commission "may" exempt persons falling within the latter class is construed to mean "must," depriving the commission of any discretion in the matter.

Same—Exemptions from Act—State may Make.

5. In the exercise of its police power, the state may exempt from the operation of a regulatory Act a class of persons or subjects which, but for the exemption, might fall within its purview, provided the exemption is reasonable and applies equally to all persons and subjects within the class designated, and the classification need not be scientific.

Same—Carriage of Mail—Failure of Act to Exempt Vehicles Does not Render Act Invalid.

6. The fact that Chapter 154 above does not exempt the operator of a commercial motor vehicle carrying the United States mail does not render it invalid as an interference with the functions of the federal government; nor does the fact that ambulances or police busses are exempt affect its validity.

Same—Fixing of License Fee by Railroad Commission not Delegation of Legislative Power.

7. The provision of Chapter 154 fixing a maximum fee for the license required by it for operating a motor vehicle for hire at $10 per annum and leaving it to the state railroad commission to fix the amount to be paid by each licensee within that limit, *held* not a delegation of legislative power.

Same—License Fees—Reasonableness—Presumption.

8. In the absence of a showing to the contrary, the license fees required to be paid under Chapter 154 above, and the rules and

---

3. Regulation of jitney busses, see notes in Ann. Cas. 1916A, 1233; Ann. Cas. 1917C, 1051; Ann. Cas. 1918C, 946; L. R. A. 1915F, 840; L. R. A. 1916B, 1156; L. R. A. 1918B, 912. See, also, 2 R. C. L. 1171.

5. See 6 R. C. L. 374.

regulations promulgated by the railroad commission, must be presumed to be reasonable.

Same—Fixing of Surety Bond by Commission not Delegation of Judicial Power.

9. The objection that the legislature by, in section 6 of Chapter 154, granting authority to the railroad commission to fix the amount of the surety bond required of a person before commencing operations under a license to operate a motor vehicle for compensation, vested judicial power in that body, *held* without merit.

Same—Powers of Railroad Commission not Arbitrary.

10. The rules and regulations made by the railroad commission for carrying into effect the provisions of Chapter 154 above must be reasonable and lawful and within the discretionary power vested in it; it has no arbitrary power.

Same—Operating Without License—Information—Surplusage.

11. Under the rule that one charged with an offense cannot question the validity of an Act as to provisions which do not apply to his case, *held* that one accused of operating an automobile, motor vehicle and motor-bus, the terms being used interchangeably, the proof showing that he operated a motor-bus, could not complain of the insufficiency of the definition of "motor vehicle" as given in Chapter 154, Laws of 1923, under which the information was filed; in such case the other two designations of the vehicle in the information must be treated as surplusage.

Same—Exemptions—State Need not Prove That Vehicle Operated by Defendant was not Exempted.

12. The state in a prosecution of the operator of a commercial motor vehicle for failure to pay the license fee prescribed by Chapter 154, Laws of 1923, need not prove that the vehicle in question was not one of those exempted from the operation of the Act, since an exception need not be negatived unless it is a constituent part of the offense.

---

[1]. Constitutional Law, 12 **C. J.**, sec. 167, p. 745, n. 1, 2; sec. 237, p. 805, n. 46, 48.

[2] Constitutional Law, 12 **C. J.**, sec. 234, p. 802, n. 94; sec. 235, p. 803, n. 11, 12; sec. 323, p. 839, n. 71; sec. 330, p. 847, n. 99, 2; sec. 338, p. 851, n. 53.

[3] Constitutional Law, 12 **C. J.**, sec. 494, p. 959, n. 96 New; sec. 1073, p. 1272, n. 19.   Motor Vehicles, 28 **Cyc.**, p. 35, n. 7 New.

[4] May, 39 **C. J.**, sec. 4, p. 1393, n. 73.   Motor Vehicles, 28 **Cyc.**, p. 35, n. 7 New.   Statutes, 36 **Cyc.**, p. 1160, n. 34, p. 1161, n. 36.

[5] Licenses, 37 **C. J.**, sec. 89, p. 236, n. 6, 8.

[6] Motor Vehicles, 28 **Cyc.**, p. 35, n. 7 New.

[7] Constitutional Law, 12 **C. J.**, sec. 338, p. 850, n. 52.

[8]. Licenses, 37 **C. J.**, sec. 45, p. 195, n. 76.   Motor Vehicles, 28 **Cyc.**, p. 35, n. 7 New.

[9] Constitutional Law, 12 **C. J.**, sec. 408, p. 902, n. 34.

[10] Motor Vehicles, 28 **Cyc.**, p. 35, n. 7 New.

[11] Constitutional Law, 12 **C. J.**, sec. 177, p. 762, n. 61.   Motor Vehicles, 28 **Cyc.**, p. 24, n. 1; p. 49, n. 57.

[12] Indictments and Informations, 31 **C. J.**, sec. 269, p. 720, n. 58; p. 722, n. 64.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

SAMUEL S. JOHNSON was charged with operating a motor vehicle, and bus line for transportation of persons and property for compensation without a license. Defendant's motion for directed verdict was sustained, and case was dismissed. The state appeals. Reversed and remanded for a new trial.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W Choate,* and *Mr. E. G. Toomey,* for the state, submitted a brief; *Mr. Choate* argued the cause orally.

No appearance on behalf of Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by the state from an order and judgment of dismissal on a directed verdict.

The defendant, Samuel S. Johnson, was placed on trial upon an information filed in the district court of Lewis and Clark county charging that, between the eighteenth day of April and the tenth day of November in the year 1924, he did "own and operate between Helena and East Helena an automobile, motor vehicle, and bus line for the transportation of persons for compensation, * * * without first obtaining a license, * * * and without filing any bond with the Public Service Commission," *etc.*

The evidence adduced was rather meager; but three witnesses were called. The first, E. G. Toomey, testified that he was attorney for and secretary of the board of railroad commissioners and in charge of its records; that it appeared therefrom that defendant had never applied for or had issued to him the required permit or license, and had never filed with the board any bond or indemnity insurance such as is

required by law and by the rules of the board on the issuance of such permit or license. One Ed. Majors testified that he had on one occasion, during the period named, ridden from East Helena to Helena in defendant's vehicle, which he designated as "Mr. Johnson's truck"; that he asked defendant what the fare was, and, on being informed by defendant that it was one dime, paid that amount to defendant. The witness further testified that from eight to twelve smeltermen rode in the truck at that time, who also paid the defendant a dime each, and that defendant was working at the smelter "off" and "on." C. Ollie Connor testified that he had ridden many times with defendant during the period stated; that "Mr. Johnson operated a bus with seats on the sides and a top over it"; that, while witness had ridden at times gratuitously, he generally paid ten cents each way over the route; that he never asked defendant what the fare was but just handed him ten cents. This witness further testified that the bus was usually filled with passengers, and that, at times, defendant could not accommodate all of those who wished to ride with him; that he took his passengers on at the Helena end near the corner of Sixth Avenue and Main Street, and at the East Helena end, at the smelter. On the cross-examination of Mr. Toomey, counsel for defendant "assumed" that the car driven by defendant was a one-ton or seven-passenger Dodge car, model of 1922.

The essential portions of the Act under which the state proceeded in this case (Chap. 154, Laws of 1923) are as follows:

"Sec. 1.   *   *   *   (c) The term 'transportation company' when used in this Act means every corporation, person * * * owning, controlling, operating, or managing any motor vehicle, motor truck, motor bus, * * * used in the business of transportation of persons or property or as a common carrier for compensation over any public highway in this state between fixed termini; * * * (e) the words 'for

compensation' shall be construed to mean transportation of any person for hire in any motor vehicle; provided, that the Railroad Commissioners may exempt from the operation of this Act the transportation of freight or passengers by motor vehicle in rural communities when not done on a commercial basis; (f) the term 'motor vehicle,' when used in this Act shall mean any self-propelled vehicle moving over the highway of this state, excepting road rollers, farm tractors, traction engines, fire extinguishing engines and police or hospital busses or ambulances; provided that every motor vehicle equipped with more than four wheels shall be declared to be a motor vehicle used in connection with a trailer or sub-trailer.

"Sec. 2. No corporation or person, as defined in section one of this Act, * * * shall operate any motor vehicle, motor truck, motor bus, but trailer, semi-trailer, or other trailer in connection therewith for the transportation of persons or property for compensation of [on?] any highway or public highway in this state .except in accordance with this Act."

Section 3 of the Act authorizes the railroad commission to regulate such transportation.

Section 4 provides for the issuance of permits to operate, and prohibits such operation without first obtaining such permit or license, and authorizes the commissioners to fix terms and conditions to be imposed.

Section 5 empowers the commission to revoke permits under certain circumstances.

Section 6, as it existed at the time of the alleged offense, ·requires each person or corporation before commencing operations under such license to file with the commission a good and sufficient "surety company" bond, satisfactory as to sureties and conditions to the commission, "or liability insurance, in such a penal sum as the Railroad Commission may deem necessary to adequately protect the interests of

the public, with due regard to the number of persons and amount of property involved, which    *    *    *    shall bind the obligators [obligors?] thereunder to make compensation for injuries to persons or loss or damage to property resulting from the operation of such vehicles,'' *etc.*

Section 7 extends the power and authority of the commission under the Constitution and laws of the state relative to complaints, hearings, *etc.*, to and over persons and corporations engaged in this method of transportation, and gives the same right of appeal from its orders as in such other matters.

Section 8 of the Act provides for a graduated license fee, according to the number, weight and size of the vehicle used, but not to exceed $10 per annum, ''for defraying the expenses of administration of this Act and the regulation of the businesses herein described.''

Section 9 makes the violation of any of the foregoing provisions, or of the orders, rules, decisions or regulations of the commission a misdemeanor, and provides a penalty therefor.

Section 10 declares that the Act shall not be construed to apply to commerce with foreign nations or among the several states, ''except in so far as the same may be permitted under the Constitution of the United States, treaties made thereunder and the Acts of Congress.''

Section 11 declares that, if any part of the Act is declared unconstitutional, such decision shall not affect the validity of the remaining portions, and that the legislature would have passed such remaining portions irrespective of those portions which may be declared unconstitutional.

At the close of the state's case counsel for defendants stated: ''Defendant moves for a directed verdict,    *    *    *    on the grounds and for the reason that the state has failed to produce evidence sufficient to prove the commission of a public offense under this law, or produce sufficient evidence

to make a case to go to the jury. "The Court: The motion, coming at this time, is equivalent to a motion to dismiss on the ground that, as a matter of law, the evidence is insufficient to submit anything to the jury." Thereupon, after stating its reason therefor, the court sustained the motion and dismissed the case.

As no appearance was made in this court by the defendant, we are not aided, in the determination of the questions involved, by the usual brief of the respondent, and, were it not for the reasons given by the learned trial judge for his disposition of the case and the questions treated in the brief filed by the attorney general and counsel for the board of railroad commissioners, we would be at a loss to know what matters are before us. From these sources it would seem that no contention was made that the state did not sufficiently prove the allegation of the information to the effect that defendant did, between the dates mentioned, operate some sort of a self-propelled vehicle for the transportation of passengers for compensation and over a regular route between fixed termini, but that the motion was sustained upon the following assumptions:

(1) That the Act under consideration is unconstitutional, by reason of the fact that it attempts to delegate to an executive or administrative board or commission legislative and judicial functions, in that it: (a) Permits the Railroad Commission arbitrarily to exempt from its operation "anybody they please"; (b) to fix the amount of license fees required; (c) to fix the amount of the bond or indemnity insurance which shall be filed; and (d) to make rules and regulations governing the issuance of permits and the conduct of the business engaged in under such permit or license.

(2) That, if the Act is constitutional, it is fatally defective, in that it cannot be determined therefrom what is meant by the term "motor vehicle" as defined therein.

(3) That the evidence is insufficient to warrant a submission of the case to the jury for the reason that the state failed to prove that the vehicle operated came within the purview of the statute by not proving that the vehicle in question was not one of those exempted.

In justice to the learned trial judge be it said that on the hearing it was frankly admitted that this is but a test case brought to determine the constitutionality of the Act, and that it was immaterial which way it was decided, so long as the ruling preserved this question for appeal, and that thereupon the court announced that it was not necessary to waste any more time or expense upon the trial, as the appeal could be taken from an order of dismissal.

The constitutionality of the creation of the railroad commission (Chap. 257, Rev. Codes 1921) and the authority of the state, in the exercise of its police power for the preservation of the lives and property of its citizens, to place transportation by motor vehicles, trucks and busses, whether by common carrier or by individuals, under the supervision and control of such a commission are not here questioned. Similar action has been taken in practically every state of the Union, and has been universally upheld. (*Buck* v. *Kuykendall,* 267 U. S. 307, 38 A. L. R. 286, 69 L. Ed. 623, 45 Sup. Ct. Rep. 324 [see, also, Rose's U. S. Notes]; *Hendrick* v. *Maryland,* 235 U. S. 610, 59 L. Ed. 385, 35 Sup. Ct. Rep. 140; *Kane* v. *New Jersey,* 242 U. S. 160, 61 L. Ed. 222, 37 Sup. Ct. Rep. 30.)

1. The first question here presented is: Has the legislature, in the enactment of Chapter 154 above, kept within its constitutional bounds?

Our Constitution is not a grant of, but a limitation upon, [1] the powers of the legislature (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708).

"The state legislature possesses all legislative power, except such as has been delegated to Congress and prohibited by the Constitution of the United States to be exercised by the United

States, and such as is expressly or impliedly withheld by the state Constitution from the state legislature.'' (12 C. J. 805, and authorities there cited.) This rule is expressly approved and followed in Mills v. Porter (Veto Case), 69 Mont. 325, 35 A. L. R. 592, 222 Pac. 428.

We have in our Constitution no prohibition against delega-[2] tion of legislative powers other than that contained in section 1 of Article IV hereinafter commented upon; but it is a fundamental principle of constitutional law that this inherent power cannot, in the broad sense of an abdication by the legislative body of its sole authority to make laws on any subject, be delegated. (Locke on Civil Government, sec. 142; Cooley on Constitutional Limitations, 6th ed., 137, and cases there cited.) This fundamental principle is, then, an implied restriction upon the legislative department under the above rule and under our Constitution.

Section 1, Article IV of the Constitution, provides: ''The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this Constitution expressly directed or per-·mitted.''

In theory, this section, common in substance, except in a few instances, to all state Constitutions, effects an absolute separation of the three departments of our government, ''but, while such is the theory of American constitutional government, it is no longer an accepted canon among political scientists; it has never been entirely true in practice.'' (12 C. J. 803; Cooley on Constitutional Law, 44; Story on Constitution of the United States, 525.)

In Brown v. Turner, 70 N. C. 93, it is said: ''While it is true that 'the executive, legislative and supreme judicial powers of the government ought to be forever separate and

distinct,' it is also true that the science of government is a practical one; therefore, while each should firmly maintain the essential powers belonging to it, it cannot be forgotten that the three co-ordinate parts constitute one brotherhood, whose common trust requires a mutual toleration of the occupancy of what seems to be 'a common because of vicinage' bordering the domains of each.''

That section 1, Article IV, does not wholly prevent the exercise of functions of a nature belonging to one department by those administering the affairs of another is recognized in *State ex rel. Hillis* v. *Sullivan*, 48 Mont. 320, 137 Pac. 392, wherein Mr. Justice Sanner, speaking for this court, said: ''The separation of the government into three great departments does not mean that there shall be 'no common link of connection, or dependence, the one upon the other in the slightest degree' (1 Story's Commentaries on the Constitution, sec. 525); it means that the powers properly belonging to one department shall not be exercised by either of the others. (Const., Art. IV, sec. 1.) There is no such thing as absolute independence.'' He then cites numerous instances of the exercise of powers by one department which, from their nature, would seem to belong to another, but which are incidents to the proper discharge of the powers vesting in the department exercising them, or are reposed in the particular department as a matter of convenience in governmental affairs.

''While the power to make laws may not be delegated to a board or commission, * * * a certain policy or rule having been prescribed by statute, matters of detail in carrying out the executive duty of giving effect to the legislative will may be left to boards or commissioners. The Interstate Commerce Commission is a conspicuous example of this rule.'' (See 12 C. J. 847, where many other examples, including that of Railroad Commissions and Public Service Commissions, are given, and many cases recognizing the rule are cited.)

In the practical administration of public affairs, the adoption of this rule is found necessary. It would be impossible to cover by a general statute all of the intricate details of modern public utilities requiring supervision and regulation, or to lay down hard and fast rules which would not work injustice in individual cases.

It is said by Henry C. Spurr in his work on the ''Guiding Principles of Public Service Regulation,'' volume 1, page 1, that ''The present public service or utility commissions with their broad powers * * * were created because of the total or partial failure of the older forms of regulation.'' These ''older forms of regulation'' are designated as (1) competition; (2) state control by direct legislation. It is said that such statutes were, of necessity, passed without knowledge of conditions affecting the individuals of classes, and were, therefore, ''arbitrary, unscientific and often unfair. They were found to be inadequate. A legislature cannot examine into the merits of individual cases.'' The spread of regulation by state commissions was rapid because it was based on scientific principles.

The same author in his work on ''Motor Vehicle Transportation,'' page 19, says: ''Regulation of automobile transportation may be direct by the state, through an Act of the legislature; or indirect, through municipalities or public service commissions, to whom the power to regulate has been delegated by the state. * * * The right of the state to regulate, either directly, or indirectly, through the agencies mentioned, is well established.'' (*Memphis* v. *State ex rel. Ryals,* 133 Tenn. 83, Ann. Cas. 1917C, 1056, L. R. A. 1916B, 1151, 179 S. W. 631, P. U. R. A. 1916A, 825; *Ex parte Dickey,* 76 W. Va. 576, L. R. A. 1915F, 840, 85 S. E. 781; *Auto Transit Co.* v. *Fort Worth* (Tex. Civ. App.), 182 S. W. 685; *Greene* v. *San Antonio* (Tex. Civ. App.), 178 S. W. 6; *Smith* v. *State,* 130 Md. 482, 100 Atl. 778.)

In *Interstate Transit Co.* v. *Derr,* 71 Mont. 222, 228 Pac. 624, this court held that: "It is within the province of the board of railroad commissioners to whom the legislature has delegated authority, to administer the Act [now before us] and impose reasonable and impartial regulations in the use of our highways by persons engaged in, or purposing to engage in, the transportation of passengers and freight by automobile." The question arose in that case, however, only incidentally, and the constitutionality of the Act was not questioned, and was therefore not decided, as such a question will never be passed upon unless it has been raised. (*Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542.)

For the reasons stated, and after an examination of the authorities generally, we conclude that Chapter 154, Laws of 1923, neither violates section 1, Article IV, of the state Constitution, nor the fundamental law that legislative power shall not be delegated, in granting to the Railroad Commission the power to impose reasonable and impartial rules and regulations for the conduct of the business to be regulated, and to determine matters of detail in carrying out the expressed legislative will.

2. Nor does it violate section 3 or section 14 of Article III [3] of the state Constitution, nor the Fourteenth Amendment to the Constitution of the United States, securing to the people the right of acquiring, possessing, and enjoying property, and prohibiting the taking of private property for public use or without due process of law, for, while a citizen has the right to travel upon the public highways and to transport his property thereon, that right does not extend to the use of the highways, either in whole or in part, as a place of business for private gain. For the latter purpose no person has a vested right in the use of the highways of the state, but is a privilege or license which the legislature may grant or withhold in its discretion, or which it may grant upon such conditions as it may see fit to impose, provided the imposi-

tion applies impartially. (*Hadfield* v. *Lundin*, 98 Wash. 657, Ann. Cas. 1918C, 942, L. R. A. 1918B, 909, 169 Pac. 516; *Gizzardelli* v. *Presbrey*, 44 R. I. 333, 117 Atl. 359; *Cummins* v. *Jones*, 79 Or. 276, 155 Pac. 171; *Memphis St. Ry. Co.* v. *Rapid Transit Co.*, 133 Tenn. 99, Ann. Cas. 1917C, 1045, L. R. A. 1916B, 1143, 179 S. W. 635; *Packard* v. *Banton*, 264 U. S. 140, 68 L. Ed. 598, 44 Sup. Ct. Rep. 257.)

Such an Act does not purport to be, and is not in fact, a regulation of the use of the highways, nor does it attempt to transmute a private carrier into a public carrier against his will by legislative fiat, but merely makes a conditional offer of a special privilege, which the offeree may accept or not, as he sees fit. He is not entitled to the privilege as a matter of right, and, if he would accept, he must do so subject to the conditions attached to the offer. (*Frost* v. *Railroad Commission* (Cal.), 240 Pac. 26; *Buck* v. *Kuykendall*, above; *People* v. *Yahne*, 195 Cal. 683, 235 Pac. 50.)

We have, so far, dealt only with the general nature of the Act as affecting its constitutionality.

3. The trial court expressed the opinion that this Act permits the Railroad Commission to exempt from its operation persons conducting a transportation business in rural districts, and that, as the Act operates only in rural districts, it permits the commission to "exempt anybody they please"; that the Act is arbitrary and despotic, and would be no more drastic had the legislature given the board power to do just as it pleased in so many words.

If, as a matter of fact, no standard of exemption is laid down in the Act, and the matter is left wholly to the discretion of the commission as to who shall be exempted from its operation, the Act is void. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, Ann. Cas. 1916D, 1051, 108 N. E. 278; *Noel* v. *People*, 187 Ill. 587, 79 Am. St. Rep. 238, 52 L. R. A. 287, 58 N. E. 616; *Anderson* v. *Manchester F. Assur. Co.*, 59 Minn. 182, 50 Am. St. Rep. 400, 28 L. R. A. 609, 60 N. W. 1095,

63 N. W. 241; *Soliah* v. *McCormack,* 17 N. D. 393, 117 N. W. 125; *Peterson* v. *Lewis,* 78 Or. 641, 154 Pac. 101.)

This criticism of the Act is based on the proviso found in subdivision (e) of section 1 thereof. A careful examination of this proviso does not warrant the conclusion reached by the learned trial judge.

It is clearly the express intention of the legislature to include within the prohibition of the Act every person operating a vehicle of the nature described for hire and as a regular business, on a commercial basis, between fixed termini, and to exclude from its operation those residing in rural communities who may occasionally carry either passengers or freight, with or without compensation, but not "on a commercial basis," and not as a regular business. As to this exemption, no doubt those persons included in the exemption would not be subject to the provisions of the Act had the legislature been silent on the subject; having spoken, no discretion as to those persons is lodged in the commission. The performance of the · act required, *i. e.,* the exemption of those falling within the proviso, affects the rights of third persons, and therefore the proviso is to be construed as though it read "must exempt" instead of "may exempt." (*State ex rel. Stiefel* v. *District Court,* 37 Mont. 298, 96 Pac. 337; *State* v. *Dotson,* 26 Mont. 305, 67 Pac. 938; *State ex rel. Interstate Lumber Co.* v. *District Court,* 54 Mont. 602, 172 Pac. 1030; *Dryer* v. *Director General, etc.,* 66 Mont. 298, 213 Pac. 210.) The exemption, then, is of a distinct class, and all persons falling within that class are exempted by the Act from its operation.

It is well settled that, in the exercise of the police power [5] of the state, exemptions may be made even of classes which, except for the exception, might fall within the purview of the statute, provided such exemption is reasonable and applies equally to all persons or subjects within the class designated (37 C. J. 236, and cases there cited; *People* v. *Sisk,* 297 Ill. 314, 130 N. E. 696), and, so long as the above rules

are observed, it is immaterial that the classification is not scientific (*Stewart* v. *Brady,* 300 Ill. 425, 133 N. E. 310).

4. It is suggested in the record that the defendant was, [6] during the period covered by the information, under a contract to carry United States mail, and that, as the statute does not exempt such carriers it is invalid as an interference with the federal government. This contention was, at least impliedly, disposed of in the case of *Interstate Transit Co.* v. *Derr,* above. It was directly determined adversely to the position taken in *State* v. *Price,* 122 Wash. 421, 210 Pac. 787, and again in the state of Washington, while it was held that such an exemption did not render the Act void (*State* v. *Seattle Taxicab Co.,* 90 Wash. 416, 156 Pac. 837), the court expressed the opinion that the Act was not capable of a construction which would permit the carrier of United States mail to operate as a carrier of passengers or freight for hire without complying with the provisions of the Act; and in Idaho a "Motor Transportation Act" was held invalid because it did exempt from its operation hotel busses operating solely between hotels and trains, and auto vehicles used in carrying the United States mail on "star routes," thus permitting such exempted vehicles to operate in violation of the provisions governing the carriage of passengers and freight for hire in connection with the exempted business. (*State* v. *Crosson,* 33 Idaho, 140, 190 Pac. 922.)

The complete answer to this contention is that the transportation of passengers or freight for hire is an independent business having nothing to do with the carriage of the mail, and the regulation and control of the former cannot in any manner interfere with the transportation of the mail. All that was necessary in order that defendant might escape liability under this Act was for him to proceed with his mail route and refuse to accept passengers for transportation for hire, as his contract for carrying the mail does not come within

the definition of either passengers or freight. (See *Buck* v. *Kuykendall* (D. C.), 295 Fed. 197.)

What is here said concerning motor vehicles used in carrying mail applies as well to those exemptions contained in subdivision (f) of section 1 of the Act. The exemption is of a class of transportation not falling within the prohibition of the statute, and the exemption is not capable of a construction which would permit police or hospital busses or ambulances to carry passengers on a commercial basis, in the sense that such carriage is prohibited without first obtaining a license in the Act before us, and such exemption does not therefore affect the validity of the Act.

5. This Act fixes a minimum fee for the license required [7] of but $10 per annum, and leaves to the commission the fixing of the amount, within the limit prescribed, to be paid by each licensee. This is not a delegation of legislative power. That power was exercised when the statute declared that such business should not be carried on without first procuring a license, and the limit within which the commission could fix the rate was set. It is akin to the power given by Congress to the Interstate Commerce Commission, which is upheld by the supreme court of the United States. (*Interstate Commerce Commission* v. *Goodrich Transit Co.*, 224 U. S. 194, 56 L. Ed. 729, 32 Sup. Ct. Rep. 436.)

Owing to the diversity of vehicles to be used and their divergent effect upon the surface of the highways, the amount of business transacted varying in each instance, justice and fair dealing require a more or less elastic scale of fees to be charged for the privilege of conducting such business, and this detail can best be handled by a board or commission so situate that it can inquire into the circumstances of each applicant. Any attempt on the part of the legislature to meet all conditions which might arise would, of necessity, result in regulation which would be "arbitrary, unscientific, and unfair."

In the absence of any showing to the contrary, the license
[8] fees required, as fixed by the Act, and the rules, regula-
tions or requirements of the commission, must be presumed
to be reasonable. (*City of Bozeman* v. *Nelson,* 73 Mont. 147,
237 Pac. 528.)

6. The next contention suggested is that the Act, in grant-
[9] ing authority to the commission to fix the amount of
the bond required, vests judicial power in that body.

As in the case of the license fee, here the legislature has
itself made the law by requiring the filing with the commis-
sion of a good and sufficient surety company bond, or indemnity
insurance, and again has left the regulation as to the amount
of such bond or insurance to the discretion of the commission,
but in this instance neither maximum nor minimum is fixed.
In this our Act differs from like Acts in most of the states
where at least a maximum amount is fixed. The only Act
similar to our own in that respect which we have been able
to find is that of Massachusetts. There, by Chapter 159,
General Laws of Massachusetts, the legislature granted to all
incorporated cities and towns the power to regulate motor
transportation within the limits of the cities and towns and
those passing through such limits and operating over routes
with fixed termini, even though they do not take on or dis-
charge passengers within such limits, and granted to the cities
and towns the right to delegate such regulation to a board,
officer or commission. Section 46 of the above Chapter requires
that the licensee must deposit, with the town treasurer, se-
curity by bond or otherwise, running to the town treasurer,
and approved by him and the licensing board or commission,
in such sum as the licensing authority may reasonably require.
As here, neither maximum nor minimum was fixed by the Act.
Certain towns delegated to the police commissioner thereof the
administration of this law. The constitutionality of the Act
was attacked, but the supreme judicial court of Massachusetts
held against the contention of defendant. (*Commonwealth* v.

*Slocum,* 230 Mass. 180, 119 N. E. 687; *Commonwealth* v. *The-berge,* 231 Mass. 386, 121 N. E. 30.) In the latter case the court said: "One purpose of the statute, if not the main one, was the protection from injury of persons properly using the public ways; the legislature well may have considered that one frequent and serious cause of danger is the reckless or careless automobilist rushing through country towns. The town did not exceed the power given to it by the statute in adopting the regulation in question. Nor can the regulation be condemned as an unreasonable exercise of the power delegated. * * * The bond of $2,500 cannot be condemned as unreasonable in amount, in view of the fact that it is designated to furnish security for injuries to person or property, or damages for death, caused by the negligent or unlawful act of the principal named in the bond or his agents or servants."

Confronted with the necessity of the regulation of this rapidly increasing mode of transportation and the impossibility of adequately protecting the public by general legislative enactments, the details of classification and regulatory requirements are generally left by the legislative bodies of the several states to such commissions as ours, or those of like character, and such action is upheld by the court as a proper and constitutional method of meeting the new conditions arising, and to be neither a delegation of the powers of one department of the government to another, nor class legislation. (*Nolen* v. *Reichman* (D. C.), 225 Fed. 812; *Lutz* v. *New Orleans* (D. C.), 235 Fed. 978, affirmed (C. C. A. 5), 237 Fed. 1018, 150 C. C. A. 654; *Jitney Bus Assn.* v. *Wilkes-Barre,* 256 Pa. 462, 100 Atl. 954; *West Sub. Transportation Co.* v. *Chicago etc. Co.,* 309 Ill. 87, 140 N. E. 56; *Western Assn.* v. *Railroad Commission,* 173 Cal. 802, 1 A. L. R. 1455, 162 Pac. 391; *Huston* v. *Des Moines,* 176 Iowa, 466, 156 N. W. 883; *Cummins* v. *Jones,* 79 Or. 276, 155 Pac. 171; *Desser* v. *Wichita,* 96 Kan. 820, L. R. A. 1916D, 246, 153 Pac. 1194; *Ex parte Dickey,* above.)

[75 Mont. 240.]

The rules and regulations promulgated and enforced by [10] the commission, must, however, be reasonable and lawful, reflecting the expressed will of the legislature, and within the discretionary power vested in the commission. Such a commission has no arbitrary power. (*Public Utilities Commission* v. *Smith,* 298 Ill. 152, 131 N. E. 371.) If the rules and regulations adopted violate the above rules, the persons affected thereby are not without recourse or relief, as under the Act an appeal lies to the courts from the rulings and orders of the commission.

7. The next contention raised is that the definition of "motor [11] vehicle" contained in subdivision (f) of section 1 of the Act is indefinite.

Why the legislature sought to define the term is not clear. The Act prohibits the operation not only of a "motor vehicle" but also of any motor-truck or motor-bus, and no attempt is made to define either of the latter terms.

Here the information charges the defendant with the operation of an automobile, motor vehicle and motor-bus, using the terms interchangeably, and it would seem that proof that he did operate any one of the prohibited conveyances would be sufficient to establish his guilt. If the term "motor-bus" applied to his conveyance, the remaining designations may be treated as surplusage, and it is immaterial what the definition of "motor vehicle" may be. A defendant cannot question provisions of an Act which do not apply to his case. (*People* v. *Beak,* 291 Ill. 449, 126 N. E. 201.)

However, the definition of "motor vehicle" includes "any self-propelled vehicle moving over the highway of this state," with certain exceptions, and should be readily understood and construed, except as to the proviso that "every motor vehicle equipped with more than four wheels shall be declared to be a motor vehicle used in connection with a trailer or sub-trailer." We will agree with the trial judge that this pro-

viso is incapable of accurate construction. It was probably included out of an abundance of caution to prevent the evasion of the law by the attachment to a four-wheeled car of some sort of permanent fixture supported by one or more wheels. But, as the Act applies to all motor cars, trucks or busses, except those exempted, whether operated as a single conveyance or with a trailer or subtrailer attached, it is immaterial what, if any, meaning the proviso has.

8. The final contention is that the state did not prove that [12] the vehicle in question was not one such as is exempted from the operation of the Act. This contention is without merit. An exception need not be negatived, unless it is a constituent part of the offense. (*State* v. *Tully*, 31 Mont. 365, 3 Ann. Cas. 824, 78 Pac. 760; *Territory* v. *Burns*, 6 Mont. 72, 9 Pac. 432; *State* v. *Big Sheep*, *ante*, p. 219, 243 Pac. 1067.)

For the reasons stated, the judgment appealed from is reversed and the cause remanded to the district court of Lewis and Clark county, with direction to grant the state a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.