INTERSTATE TRANSIT CO., APPELLANT, *v.* DERR ET AL., RESPONDENTS.

(No. 5,566.)

(Submitted July 1, 1924. Decided July 12, 1924.)

[228 Pac. 624.]

*Injunction—Interstate Commerce—Auto Vehicles—Regulation by State—Arbitrary Refusal of License—Powers of Board of Railroad Commissioners.*

Interstate Commerce by Auto Vehicles—Regulation by State Permissible —Power of Board of Railroad Commissioners.

1. Where Congress has acted in the matter of regulation of interstate commerce, the state cannot interfere, but in the absence of regulation by it as respects such commerce carried on by motor vehicles, the state may, as it has done by Chapter 154, Laws of 1923, in the exercise of its police power prescribe rules and regulations for such traffic, and the state board of railroad commissioners has the power to carry its provisions into effect, provided its acts in that regard are not arbitrary or capricious.

Same—Refusal of License Without Hearing—Arbitrary Action by Board of Railroad Commissioners—Injunction.

2. *Held*, in an action to enjoin the board of railroad commissioners from interfering with plaintiff, an operator of auto vehicles engaged in intra and interstate commerce, that the board in denying a license to plaintiff, who had offered to comply with the law and the rules and regulations of the board and had ample equipment to render efficient service, without giving him a hearing and solely on the ground that if the license were issued others engaged in like service would probably not be able to withstand the competition, acted arbitrarily, and that the trial court erred in denying the injunction.

Appeal from District Court, Missoula County; Mr. A. N. Whitlock, Judge pro tem.

ACTION by the Interstate Transit Company against Mark Derr, as county attorney of Lake county, Montana, the State Board of Railroad Commissioners, and others. From an order denying plaintiff an injunction, it appealed. Reversed and remanded.

---

1. License tax or fee on automobiles as affected by interstate commerce clause, see note in 25 **A. L. R.** 37.

*Mr. E. G. Toomey,* for Appellants, submitted a brief and argued the cause orally.

*Mr. H. H. Parsons,* for Respondent, submitted a brief and argued the cause orally.

*Mr. Lester Loble, Amicus Curiae,* submitted a brief.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in injunction. The cause came on for hearing upon an order to show cause why the defendants should not be enjoined from interfering with and preventing the plaintiff from operating for hire a line of motor-busses between the city of Wallace, in the state of Idaho, and the city of Kalispell, in the state of Montana. It was submitted upon the admitted facts contained in the pleadings, and no testimony was introduced.

It appears from the allegations of the complaint admitted by the answer that the plaintiff, a Montana corporation, since the first day of June, 1924, has been the owner of and engaged in the operation of an automobile bus or stage line having its western terminus in the city of Wallace, Idaho, and its eastern terminus in the city of Kalispell, Montana, and passing through the counties of Missoula, Lake and Flathead in the state of Montana; such line is and has been since the first day of June engaged in the transportation of passengers and baggage between such points for hire and profit, the busses or automobiles being operated daily. The plaintiff is engaged in interstate commerce between such points, and no question is raised as to the good faith of the operation or the adequacy of the facilities furnished.

The plaintiff made application to the board of railroad commissioners to operate interstate business between Wallace, Idaho, and Kalispell, Montana, offering to comply with the law and all reasonable rules and regulations, which was denied, the reasons assigned therefor being (1) that there is adequate

service between Missoula and Kalispell; and (2) that by the issuance of such a permit to the plaintiff others engaged in the carriage of passengers and freight by automobile between those points would probably not be able to withstand such competition. It does not appear whether the plaintiff was given a hearing.

Subsequently the plaintiff made proper application to the board of railroad commissioners for the issuance of a permit to conduct such interstate business from Missoula, Montana, to Wallace, Idaho, offered to furnish bonds and comply with the law and all rules and regulations of the board. On the same day, June 20, 1924, the board declined and refused to issue such permit, and there is nothing in the record to indicate the plaintiff was accorded any hearing on its last application.

The plaintiff began operation between Wallace, Idaho, and Kalispell, Montana, and the defendants have been causing the arrest of the operators of its busses in the various counties of the state of Montana through which they passed, and have announced that they would continue to do so acting under authority alleged to be given by Chapter 154 of the Laws of 1923.

An injunction was by the court denied and the case is now before us on appeal from the order denying the injunction. The determinative questions necessary to be considered by us in disposing of this appeal are: (1) Has the state authority to impose regulations on carriers engaged in interstate commerce? (2) May the board of railroad commissioners arbitrarily refuse to permit an interstate automobile carrier of freight and passengers to operate over the highways in Montana? And (3) Has it done so in the instant case? These questions will be considered and disposed of together.

Chapter 154 of the Laws of 1923, which is here involved, [1] by its title purports to be an Act to provide for the supervision and regulation of transportation of persons and property for compensation over any public highway in Montana by motor vehicles, defining transportation for compensation and

providing for supervision and regulation by the Railroad Commission and providing for the enforcement of the Act and punishment for violation thereof. The second section provides that no one shall operate motor vehicles for such transportation for hire over the highways of Montana except in accordance with this Act.

Section 3 gives the Railroad Commission supervision and the power to inquire into rates, fares and charges and to prescribe reasonable ones and to require adequate facilities and to require the filing of annual reports and such other data as may be required by the commission. The Act likewise leaves cities and towns free to enact and enforce reasonable regulations and ordinances, including licenses.

Section 4 reads as follows: "No transportation company, as defined in section one of this Act, shall hereinafter [hereafter?] operate any motor vehicle, motor truck, motor trailer, bus trailer, semi-trailer or other trailer in connection therewith for the purpose of transportation of persons or property for compensation on any public highway of this state without first having obtained from the railroad commissioners of Montana a certificate which shall set forth the special terms and conditions under which permission is granted to operate any of the vehicles above mentioned. * * * A permit issued by the Railroad Commission to operate any motor vehicle or any other vehicle prescribed by this Act for compensation over any of the highways of the state of Montana shall not be an exclusive right or license to operate over any route, road, highway or between any fixed terminals, but said Commission shall have the power after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder or license, under this Act, only when the existing auto transportation company or companies serving such territory, route or stage line, does not provide adequate transportation facilities and services to the satisfaction of the Commission, and in all other cases with or without hearing, to issue said certificate as prayed for, or for good cause shown to refuse to issue same or to issue

71 Mont.—15

it for the partial exercise only of the said privilege sought, and may attach to the exercise of the rights granted by certificate such terms and conditions as in its judgment, the public convenience and necessity may require.''

Section 6 requires the filing with the Railroad Commission of a bond or taking liability insurance to provide for compensation for any injuries to persons or property resulting from the operation of vehicles. The section also requires a bond for the payment of all fees due the state and for the faithful carrying out of the permit granted.

Section 7 gives the Railroad Commission full power in the matter, provides for rehearing and actions for review in the state courts, and appeals to the supreme court.

Section 8 requires the payment of an annual license fee in accordance with the weight and size of the vehicle, provided that such fees shall be used for the expense of administering the Act.

Section 9 makes a violation of the Act a misdemeanor punishable by fine or imprisonment, or both.

Section 10 reads as follows: ''Neither this Act nor any of the provisions thereof shall be applied or be construed to apply to commerce with foreign nations or commerce among the several states of this Union except in so far as the same may be permitted under the Constitution of the United States, treaties made thereunder and the Acts of Congress.''

Section 11 provides that if any section or portion of the Act should be held unconstitutional such holding shall not affect the remaining portions. The Act was approved March 12, 1923.

The Act, like almost all of the regulatory statutes passed, in the different jurisdictions in the last few years, contains the common requirement that the applicant must obtain a certificate of convenience and necessity. The theory underlying such a requirement is the theory which underlies public service laws generally, based upon the principle of regulated monopoly. The principle is well set forth in a recent Illinois

case where the regulation of motor vehicles was involved: *West Suburban Co.* v. *Chicago & West Towns Ry. Co.,* 309 Ill. 87, 140 N. E. 56, P. U. R. 1923E, 150. The court uses this language: "It is not the policy of the Public Utilities Act to promote competition between common carriers as a means of providing service to the public. The policy established by that Act is that, through regulation of an established carrier occupying a given field and protecting it from competition it may be able to serve the public more efficiently and at a more reasonable rate than would be the case if other competing lines were authorized to serve the public in the same territory. Methods for the transportation of persons are established and operated by private capital as an investment but as they are public utilities the state has the right to regulate them and their charges; so long as such regulation is reasonable."

Was it the intention of the legislature in enacting Chapter 154 that the same should apply at all to interstate commerce? If it was not, then clearly no compliance with its provisions on the part of the plaintiff is required. Section 10 of the Act above quoted seems to answer that question since it provides that the provisions of the Act shall not be construed to apply to commerce among the states except in so far as may be permitted by the Constitution of the United States and the Acts of Congress, indicating a clear legislative intent that its provisions shall apply to interstate traffic in so far as the Constitution and the Acts of Congress permit.

Section 8 of Article I of the Constitution of the United States provides that Congress shall have power "to regulate commerce with foreign nations and among the several states and with the Indians." Acting under this power Congress has assumed to regulate interstate commerce of certain kinds by means of the Interstate Commerce Act (U. S. Comp. Stats., sec. 8563 *et seq.*), which governs interstate commerce by railroads and other designated agencies, but it clearly does not assume to regulate interstate commerce by motor vehicles. Indeed, Congress has not assumed to regulate commerce between

the states carried on by this means, so that we have a field which Congress has the right to occupy but has not yet done so. In the absence of action by Congress, how far may the states go in regulating such commerce?

It is of course a fundamental principle of constitutional law that a state may not directly regulate, prohibit or burden interstate commerce. (*Gibbons* v. *Ogden,* 9 Wheat. (U. S.) 1, 6 L. Ed. 23 [see, also, Rose's U. S. Notes].)

"If a state enactment imposes a direct burden upon interstate commerce, it must fall regardless of federal legislation. The point of such an objection is not that Congress has acted, but that the state has directly restrained that which, in the absence of federal regulation, should be free. If the Acts * * * constitute a direct burden upon interstate commerce, they would be invalid without regard to the exercise of federal authority touching the interstate rates said to be affected. * * * 'The genius and character of the whole government,' said Chief Justice Marshall, 'seems to be, that its action is to be applied to all the external concerns of the nation, and to those internal concerns which affect the states generally; but not to those which are completely within a particular state, which do not affect other states, and with which it is not necessary to interfere, for the purpose of executing some of the general powers of the government. The completely internal commerce of a state, then, may be considered as reserved for the state itself.' (*Id.,* p. 195.) This reservation to the states manifestly is only of that authority which is consistent with, and not opposed to, the grant of Congress. There is no room in our scheme of government for the assertion of state power in hostility to the authorized exercise of federal power." (*Minnesota Rate Case,* 230 U. S. 352, 57 L. Ed. 1511, Ann. Cas. 1916A, 18, 48 L. R. A. (n. s.) 1151, 53 Sup. Ct. Rep. 729.)

Under the principles laid down by the decisions there can be no question but that all reasonable regulations properly within the exercise of the police power of the state and not in

conflict with any Act of Congress may be applied by the states
to carriers engaged in interstate commerce. That this is so
in the case of interstate automobile traffic has been held by the
supreme court of the United States in at least two cases: *Hendrick* v. *Maryland,* 235 U, S. 610, 59 L. Ed. 385, 35 Sup. Ct.
Rep. 140 [see, also, Rose's U. S. Notes] ; *Kane* v. *New Jersey,*
242 U. S. 160, 61 L. Ed. 222, 37 Sup. Ct. Rep. 30. In the
first of these cases the court says: "The movement of motor
vehicles over the highways is attended by constant and serious
dangers to the public, and is also abnormally destructive to the
ways themselves. Their success depends on good roads the
construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made
upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well
known, in order to meet this demand and accommodate the
growing traffic the state of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own
jurisdiction the state put into effect the above-described general
regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from
the class for whose needs they are essential and whose operations over them are peculiarly injurious. In the absence of
national legislation covering the subject a state may rightfully
prescribe uniform regulations necessary for public safety and
order in respect to the operation upon its highways of all
motor vehicles—those moving in interstate commerce as well
as others. And to this end it may require the registration of
such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse power of
the engines—a practical measure of size, speed, and difficulty
of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to
the preservation of the health, safety and comfort of their

citizens; and it does not constitute a direct and material burden on interstate commerce.''

In the *Kane Case* the court says: "The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as residents. It includes the right to exact reasonable compensation for special facilities afforded, as well as reasonable provisions to insure safety. And it is properly exercised in imposing a license fee graduated according to the horse-power of the engine. (*Hendrick v. Maryland*, 235 U. S. 610, 59 L. Ed. 385, 35 Sup. Ct. Rep. 140 [see, also, Rose's U. S. Notes].)''

Applying these principles we do not hesitate to hold that all reasonable regulations with reference to the matter of registration, license fees and the like such as are contained in Chapter 154 are within the power of the state and apply to automobiles engaged in interstate traffic as well as those operated exclusively within the state. Accordingly it is within the province of the board of railroad commissioners to whom the legislature has delegated authority, to administer the Act and impose reasonable and impartial regulations in the use of our highways by persons engaged in, or purposing to engage in, the transportation of passengers and freight by automobile as a common carrier. However, in so doing the board must have sufficient evidence before it to justify its decision. It may not act arbitrarily or capriciously. This case is easily differentiated from the case of *Buck* v. *Kuykendall*, 295 Fed. 197, relied upon by the trial court in denying the injunction. It is conceded by counsel that had it not been for the opinion in that case the injunction sought would have been issued on the admitted facts. That decision was by the district court of the United States for the western division of the southern district of the state of Washington. The case having been presented and heard was decided on December 7, 1923, by Gilbert, Circuit Judge, and Cushman and Neterer, District Judges, in an opinion written by Judge Neterer, and a supplemental opin-

ion by Judge Neterer, rendered January 7, 1924, concurred in by Rudkin, Circuit Judge, and Cushman, District Judge.

We think the trial court was mistaken in its application of that decision. There the determination made by the department of public works of the state of Washington was not made arbitrarily as was done in '` ' instant case by the board of railroad commissioners. That case actually approved the right of the state of Washington through its department of public works to prevent common carriers engaged in interstate commerce to operate upon sufficient showing made. Assuming that the federal court was right, which in our opinion is very doubtful, the decision in the *Buck Case* is not applicable to the facts in the case under consideration. In the *Buck Case* the admitted facts made to appear in the order of the department of public works are nearly as strong as it is possible to make them to justify the order of the department of public works in denying the plaintiff's certificate of necessity and permission to operate over the public highways in the state of Washington in connection with his proposed operation of motor vehicles as a common carrier between Portland, Oregon, and Seattle, Washington. Reference to the facts recited at great length will readily show the difference in the case under [2] consideration and the *Buck Case*. It is clear from the facts recited in the present case that the board acted most arbitrarily and its only justification of the order by it made in denying the plaintiff the license he sought was that the issuance of such permit would injuriously affect others licensed to operate between Missoula and Kalispell in the state of Montana, but it does not appear from the record that the plaintiff was accorded hearing on this application. The application made by the plaintiff for a permit to operate in Montana between Missoula, Montana and Wallace, Idaho, was summarily denied the day it was presented. It must be borne in mind that in this case plaintiff offered to comply with the law and all rules and regulations imposed by the board, and that it is provided with ample equipment to render efficient service, so

we are not called upon to decide whether the board may in a proper case refuse to permit a common carrier engaged in interstate commerce to use the public highways of this state. The plaintiff in its application offered to do and perform all that might be required of it by the law or the board. It could not do more. The reasons assigned by the board of plaintiff's application are wholly inadequate.

This disposes of all questions under consideration. Although we reach a different conclusion from the learned judge *pro tempore,* A. N. Whitlock, Esq., who heard and determined this cause in the lower court, we wish to acknowledge material assistance in reaching our decision from the written opinion rendered by him in this case, which has been made available to us by counsel.

It is our opinion that the trial court was in error in denying the plaintiff an injunction; therefore the order is reversed and the cause remanded to the district court of Missoula county, with directions to grant the injunction.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

Rehearing denied September 10, 1924.