NORTHERN PACIFIC RAILWAY CO., Appellant, *v.* BEN-
NETT, Respondent.

(No. 6,330.)

(Submitted December 3, 1928.  Decided December 27, 1928.)

·   [272 Pac. 987.]

*Mr. F. A. Silver, Messrs. Murphy & Whitlock, Mr. Howard Toole* and *Messrs. Gunn, Rasch, Hall & Gunn,* for Appellant, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

486

*Mr. Edmond G. Toomey, Mr. E. C. Mulroney* and *Mr. Walter L. Pope,* for Respondent, submitted a brief.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment of dismissal in a proceeding instituted by the Northern Pacific Railway Company to enjoin the operation of a bus line for hire over a route served by the company.

On May 2, 1927, defendant E. W. Bennett applied to the state Railroad Commission for permission to carry persons and property for compensation in a motor vehicle from Missoula through Drummond to Philipsburg and return; his application fully complied with the legal requirements therefor and with it he filed such a surety bond as is required on the granting of such a permit and deposited with the commission the amount of the annual fee fixed for the operation of such a vehicle as he proposed to use. On receipt of the application the commission gave it some formal consideration without notice to the applicant, and, on information acquired in connection with prior applications by other parties to operate over the route prescribed, theretofore rejected, the

commission tentatively determined that the route was adequately served and the business available would not warrant the establishment of the bus line and that the application should be rejected, but no record was made to that effect and no notice thereof was given to the applicant as no action was, in fact, taken.

On May 5 the commission notified defendant that his application had been received and that it had been reported to that body that he had already commenced operations and advised him that he had no legal right to operate until the board had passed upon his application and he had received a certificate authorizing him to operate, and on May 12 returned to him the amount deposited, with the information that no fee was due as no certificate had been issued. No correspondence thereafter passed between the defendant and the commission; no bearing was ever had or action taken.

Notwithstanding the information received by defendant he continued to operate as though licensed, and on June 3, 1927, the Northern Pacific Railway Company commenced proceedings to enjoin such operation on the ground that it was furnishing regular service over the route described and the unauthorized operation by defendant was injuring its business and causing it irreparable damage for which it has no plain, speedy or adequate remedy in the ordinary course of law.

Defendant answered, setting up his application for a permit, alleging compliance with all of the requirements of the law and that the commission arbitrarily neglected and refused to take any action; that he is willing and able to comply with all conditions which might be imposed upon him and is entitled to operate his bus line over the route described, as it is not served by any other motor vehicles transportation company. The allegations of the answer were denied by reply.

The plaintiff applied for a temporary restraining order, which was denied, and the final hearing was had on December 2, 1927, before the court sitting without a jury; it resulted in a judgment of dismissal entered in February, 1928, from

which plaintiff in due time perfected its appeal. Plaintiff's assignments of error are to the effect that the trial court erred in deciding the issues in favor of defendant, in denying the injunction and in entering judgment of dismissal.

The court made no findings of fact nor conclusions of law, but defendant's counsel contend that the judgment may be upheld upon the theory that a finding that the board acted capriciously and arbitrarily is justified by the showing made and, with such a finding implied, the judgment must be affirmed on authority of *Interstate Transit Co.* v. *Derr*, 71 Mont. 222, 228 Pac. 624, or, secondly, that such a judgment was compelled by a proper construction of the Motor Vehicle Act. (Chap. 154, Laws of 1923.)

The provisions of Chapter 154, Laws of 1923, applicable here, are as follows:

Section 1 defines the term "Transportation Company" as including persons.

Section 2 prohibits any corporation or person from operating in the manner described, except in accordance with the Act.

Section 3 places the supervision of transportation companies in the Railroad Commission and contains a final clause which will later be discussed.

Section 4 provides that "no transportation company, as defined in section one of this Act, shall hereafter operate any motor vehicle * * * for the purpose of transportation of persons or property for compensation on any public highway of this state without first having obtained from the Railroad Commission of Montana a certificate which shall set forth the special terms and conditions under which permission is granted to operate," etc. It further provides that a permit issued "shall not be an exclusive right or license to operate over any route, road or highway or between any fixed terminals, but said commission shall have the power after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate

holder or licensee, under this Act, only when the existing auto transportation company or companies serving such territory, does not provide adequate transportation facilities and service to the satisfaction of the commission, and in all other cases, with or without hearing, to issue said certificate as prayed for, or for good cause shown to refuse to issue the same or to issue it for partial exercise only of the privilege sought, and may attach to the exercise of the rights granted by said certificate such terms and conditions as in its judgment the public convenience and necessity may require.''

1. The possession of the required certificate is a prerequisite to the operation of a motor vehicle for hire under such an Act as ours, and operation without it may be enjoined by the courts (42 C. J. 680 and 699; *Western Transportation Co.* v. *People,* 82 Colo. 456, 261 Pac. 1), and a railway company showing material loss by reason of the illegal operation of a bus line in competition with it has such an interest as entitles it to prosecute such an injunction proceeding. (*Niagara Gorge Ry. Co.* v. *Gaiser,* 109 Misc. Rep. 397, 178 N. Y. Supp. 156; *Memphis Street Ry. Co.* v. *Rapid Transit Co.,* 133 Tenn. 99, Ann. Cas. 1917C, 1045, L. R. A. 1916B, 1143, 179 S. W. 635; *Boston & M. Ry. Co.* v. *Cate,* 254 Mass. 248, 150 N. E. 210.)

The fact that the proper authorities fail or neglect to act upon an application does not justify the applicant in taking the law into his own hands by operating in defiance of the authorities; his remedy is by mandamus to compel action. (*Greeley Transportation Co.* v. *People,* 79 Colo. 307, 245 Pac. 720; 38 C. J. 657; sec. 9848, Rev. Codes 1921.)

It is true that in *Interstate Transit Co.* v. *Derr,* above, the transportation company was held to be entitled to operate in spite of the fact that it held no certificate from the commission, but this holding was based upon the fact that it was clearly entitled to a certificate and the commission had acted arbitrarily and capriciously in refusing to issue it. While there is certain language in the opinion which counsel for

defendant construe as authority for the statement that whenever the commission arbitrarily refuses a certificate, the applicant may proceed to operate without a certificate, we cannot agree that the opinion so holds. The opinion deals solely with the situation of an applicant for a permit to engage in interstate transportation and holds, in effect, that such an applicant is entitled to a permit, as a matter of right, by reason of the fact that the state cannot prohibit such transportation. In that opinion our distinguished associate, Mr. Justice Galen, points out that the trial court was led astray by following the decision of the federal court in *Buck* v. *Kuykendall*, 295 Fed. 197, and expresses grave doubt that the court correctly stated the law when it said that a state, acting through its proper department, "could prevent common carriers engaged in interstate commerce to operate upon sufficient showing made." Since the decision in the *Derr Case* was rendered (July 12, 1924) the doubt expressed has been justified by the decision of the supreme court of the United States reversing the trial court in *Buck* v. *Kuykendall* and holding, in that opinion and in another, that statutory provisions empowering state boards or departments to deny a permit on the ground that its granting would be prejudicial to the welfare or convenience of the public are unconstitutional when applied to an applicant desiring to use the highway in carrying on interstate commerce, as in contravention of the interstate commerce provision. On such an application the commission cannot refuse a permit. (*Buck* v. *Kuykendall*, 267 U. S. 307, 38 A. L. R. 286, 69 L. Ed. 623, 45 Sup. Ct. Rep. 324; *Bush* v. *Maloy*, 267 U. S. 317, 69 L. Ed. 627, 45 Sup. Ct. Rep. 326.) The decision in the *Derr Case* is in conformity with these later decisions of the highest court of the land and, on the fact conditions presented, is unassailable, but it is not controlling here, as this defendant applied for a permit to engage in strictly intrastate transportation which is a proper subject of regulation by the state, and, in

this case, the commission did not arbitrarily deny a permit but merely did not act.

We do not think that the showing made would justify an implied finding that the nonaction of the commission amounted to an arbitrary denial of a permit, nor even an arbitrary refusal to act in the matter. Defendant did not seek or await action by the board but proceeded to operate without regard for the authority of the commission or its admonition that he must await action and, thirty days after the application was filed, action was commenced to test the right of defendant to operate without a certificate. This is but a case of non-action which should have been met, as above pointed out, by mandamus proceedings to compel action by the commission.

2. Section 4, above, divides applications made into two classes: first, those made for a permit to enter into competition with existing bus lines operating under license from the commission; second, those made for permission to operate over a route not so served, though it may be served by some other kind of transportation company. Counsel for defendant contend that, as to this second class of applications the statute fixes no standard or basis on which the commission may, in the exercise of discretion, determine that a permit or certificate should not be issued and, therefore, either this provision is unconstitutional or, upon such an application fully complying with the requirements of the Act, the applicant is entitled to a certificate as a matter of right and the issuance thereof becomes a mere ministerial act on the part of the commission.

While counsel do not seek to have this provision declared unconstitutional, they contend that, unless we give to it the interpretation for which they contend, we are compelled to such a declaration by the provisions of Article IV of our Constitution, in effect prohibiting the delegation of legislative powers to an administrative body, and the rule announced in *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Railroad Commission,* 76 Mont. 305, 247 Pac. 162, and in many outside

authorities cited on this subject. We cannot agree with counsel either as to the statement that the provision under consideration contains no standard or basis for the denial of a permit, or that the provision in its entirety contains a delegation of legislative authority to the commission; to so hold would be to do violence to both the letter and the spirit of the Motor Vehicle Transportation Act as a whole.

Prior to the advent of motor-driven vehicles our roads were constructed and maintained by the several counties of the state, but thereafter it became necessary for the state, in a large measure, to take over this work and to adopt new measures for the protection of the roads constructed and to keep down the ever-mounting cost of maintenance, as well as to minimize the increased danger to persons and property in the use of the highways and, in order to do so, it became a necessary function of government to regulate transportation of persons and property for compensation over the highways,— an enterprise theretofore confined almost exclusively to rail transportation, as, if not so regulated, the appropriation of the highways as a place for the transaction of private business might eventually result in forcing the state into the position of maintaining highways for private enterprise, rather than for the public purposes for which they were established.

In *Barbour* v. *Walker*, 126 Okl. 227, 56 A. L. R. 1049, 259 Pac. 552, it is declared that it was to obviate this condition, rapidly materializing, that the legislature of that state enacted a law which is, in all essential particulars, similar to our own, and that "the principle applied to the regulation of the use of the highways for private enterprise rests upon public convenience and public necessity, a principle recognized and in a large degree applied by the national government in placing the control and regulation of the railroads of the country in the hands of the Interstate Commerce Commission."

The Act places transportation of this nature under the control of the commission and contemplates that that body

shall exercise a broad discretion in discharging its duties, to the end that the convenience and necessities of the public shall be best served, granting, as it does, authority to either issue or refuse a certificate "on good cause shown," or to grant but a part of the power applied for, and to attach to any certificate issued "such terms and conditions as in its judgment the public convenience and necessity may require"; it clearly evidences the legislative intention to vest in the commission power to either grant or refuse a certificate to an applicant in this class on determination by that body of the question as to whether or not such public convenience or necessity requires such transportation facilities as the applicant proposes to install over the proposed route, and in this connection the commission may take into consideration existing means of transportation over the proposed route. (*Red Star Transportation Co.* v. *Red Dot Coach Lines,* 220 Ky. 424, 295 S. W. 419; *Sonnger* v. *Public Utility Commission,* 115 Ohio St. 449, 154 N. E. 734; *Bartonville Bus Line* v. *Eagle Motor Coach Line,* 326 Ill. 200, 157 N. E. 175.)

As to the first class mentioned in section 4, above, a standard of action was easy of declaration, but as to the second class it would be impossible to cover by statutory enactment the multifarious fact conditions which might appropriately be considered by the commission in determining whether its action should be favorable or unfavorable to the applicant and, under such conditions, Article IV of the Constitution does not require a detailed recitation in a statute of all of the matters to be considered by the commission, but only that general rules be given for its guidance and the ultimate facts which it must find before taking the prescribed action be declared, with, perhaps, provision for the correction of an erroneous ruling by appeal or review in the courts. These requirements are met by section 4, above, under the authorities, and nothing in the opinion in *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Railroad Commission,* above, militates against such holding. In that case a statute permitting the commission

to require the installation of a spur track without notice or hearing was held unconstitutional as violative of the "due process" provision of the Constitution (sec. 27, Art. III); on that point the opinion is not controlling here, as no person has a vested right to use the public highways for a commercial purpose and a denial of the mere license to do so takes from him no property or property right (*State* v. *Johnson,* 75 Mont. 240, 243 Pac. 1073; *Willis* v. *Buck,* 81 Mont. 472, 263 Pac. 982).

However, in the opinion under consideration the court said: "The statute does not undertake, even in the most general terms, to prescribe the conditions under which the board may compel a carrier to construct a spur. It does not provide that the board may issue its order when reasonable public necessity requires it; there is no indicated rule of decision." This statement in condemnation of the statute considered indicates its corollary that a like provision for the issuance of an order on a determination of the "reasonable public necessity" would not fall within the prohibition against the delegation of legislative authority, and on this subject Mr. Chief Justice Callaway, speaking for the court therein, said: "We think the correct rule as deduced from the better authorities is that if an Act but authorizes the administrative officer or board to carry out the definitely expressed will of the legislature, although the procedural directions and the things to be done are specified only in general terms, it is not vulnerable to the criticism that it carries a delegation of legislative power."

A statute in principle similar to the provision under discussion was upheld in California, over the objection here made, in *Bank of Italy* v. *Johnson,* 200 Cal. 1, 251 Pac. 784. There the statute prohibited any bank from opening a branch bank without the written approval of the superintendent of banks, which approval might be "given or withheld in his discretion and shall not be given unless he has ascertained to his satisfaction that the public convenience and advantage

will be promoted'' thereby. In discussing this provision the court said: ''The legislature has not attempted to define the phrase 'public convenience and advantage,' nor has it attempted to declare where or how or under what circumstances the public convenience and advantage would or would not be promoted by the opening of a branch bank in a particular case. The obvious reason for the omission to define the phrase is because it would seem to be impossible to define it so that the definition would comprehend every variety and set of circumstances surrounding each particular application. * * * The phrase would seem to be as difficult of definition as 'police power,' 'public convenience and necessity,' 'due diligence' or 'probable cause,' as those expressions are used in our law. But the impossibilities of definition do not detract in the least from the necessity of undertaking the task and of ascertaining the facts in each case and it is for the superintendent of banks to so proceed and to ascertain them in the exercise of his power. In that exercise he performs an executive or administrative function.''

Henry ·C. Spurr, in his work on Motor Vehicle Transportation (page 46), states broadly that ''whenever state commissions are given jurisdiction over automobile transportation, operators are required to obtain permits or certificates from the commission entitling them to engage in the business. These are granted only when it is shown that public convenience and necessity require the service. The certificates are generally called certificates of public convenience and necessity.''

In *Interstate Transit Co.* v. *Derr,* above, it is said that our Act ''like almost all of the regulatory statutes, in the different jurisdictions in the last few years, contains the common requirement that the applicant must obtain a certificate of convenience and necessity. The theory underlying such a requirement is the theory which underlies public service generally, based upon the principle of regulated monopoly.''

In considering an Act which does not mention public convenience and necessity and is much more vulnerable than ours to the charge that it contains no standard or test, the supreme judicial court of Maine rejected the contention that thereunder the issuance of a certificate was merely a matter of registration to which the applicant was entitled as a matter of right and declared that, "in view of the general trend of legislation on this subject, the legislative intent * * * was, instead of limiting the * * * commission in issuing such certificates to instances only where public convenience and necessity required, to vest in the commission a broader discretion, having in view, not only the necessity and convenience, but the general welfare of the public," and that the phrase " 'certificate permitting such operation' itself signifies something other than a mere ministerial act, and indicates rather a voluntary assent after due consideration of the public needs and welfare." (*Maine Motor Coaches, Inc.,* v. *Commission,* 125 Me. 63, 130 N. E. 866.)

It is true, as asserted by counsel for defendant, that in the case last cited the question of delegation of legislative authority was not presented, but that decision was followed in *In re James,* 99 Vt. 265, 132 Atl. 40, wherein the question was raised and, in construing a provision similar to our own, wherein it is provided that no person shall operate a motorbus until he shall have obtained a certificate which shall contain certain regulatory matters and declare "that the operation of such motor bus * * * over such route shall promote the general good of the state," the court said: "The answer to the first proposition is that the legislature did furnish a guide for, and limitation to, the commission's action in language so clear that 'all who run may read,' namely 'the general good of the state.' That is the pole star by which the commission is to be guided in the discharge of the duties imposed upon it by the statute. None other is required. (*State* v. *Darazzo,* 97 Conn. 728, 118 Atl. 81.) "

The court then declares the rule relating to legislative delegation of authority to an administrative officer and its declaration is, in effect, the rule deduced by this court in *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Commission,* above.

In this connection the following declaration is apt: "A ■ power to grant a privilege by one is inconsistent with the possession on the part of the other of an absolute right to exercise such privilege. The requirement that a person must secure leave from someone to entitle him to exercise a right, carries with it, by irresistible implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent." (*People ex rel. Schwab* v. *Grant,* 126 N. Y. 473, 27 N. E. 964.)

3. Counsel for defendant suggest that, as defendant's application fully complied with the requirements of the Act, he was entitled to operate as a matter of right by reason of the concluding provision of section 3 of the Act. That section authorizes the Railroad Commission to "supervise" all transportation companies coming within the provisions of the Act, and closes with the provision that "nothing in this Act shall empower the Railroad Commissioners of Montana to restrict the operation of such transportation company or companies, as have complied with the provisions of this Act, in the use of the public highways." Whatever may be the meaning and purpose of this provision, read in the light of the powers granted the commission by the Act, a sufficient answer to this suggestion is that compliance with the provisions of the Act includes the securing of the certificate required and refraining from the use of the highways unless or until such a certificate is secured. (*Ex parte Anderson,* 49 Nev. 208, 242 Pac. 587.)

The showing made entitled the plaintiff to an injunction and nothing to the contrary is made to appear. The judgment is reversed and the cause remanded to the district court of

Missoula county, with direction to issue the injunction as prayed for.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.