STONER, Respondent, *v.* UNDERSETH et al., Appellants.

(No. 6,462.)

(Submitted April 4, 1929. Decided May 8, 1929.)

[277 Pac. 437.]

12

14

*Mr. Lester H. Loble, Mr. Hugh R. Adair* and *Mr. Eugene S. Sanden,* for Appellants, submitted a brief; *Mr. Adair* argued the cause orally.

*Mr. E. G. Toomey,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Defendants have appealed from a judgment in favor of plaintiff, holder of a permit or certificate from the Montana Railroad Commission authorizing him to furnish freight and passenger service, by motor transportation, between Helena and Lincoln, in Lewis and Clark county, this state, which judgment purports perpetually to enjoin the defendants from operating motor vehicles in intrastate commerce over the route served by plaintiff.

The route described in the record is along the public highway from Helena through the agricultural centers of Silver, Canyon Creek, Wilborn and Stemple to Lincoln, a distance of fifty-two miles, with a side trip from Wilborn to the mining camp of Gould, five miles off of the route described in the plaintiff's permit. While Gould is not mentioned in the permit, the pleadings allege and admit that plaintiff's privilege includes a connection to Gould and the record discloses that the Railroad Commission has recognized this connection by the approval of time schedules and freight and passenger rates to and from Gould as well as all other points on the route.

Plaintiff listed with the commission but one vehicle constructed for the carriage of freight and passengers, which he

operates between Helena and Lincoln, and operates a second truck from Gould to connect with the main route, but the permit for the first truck mentioned recites that "in case other or additional equipment is used, you will be governed by Rule 6, page 7, of the Rules and Regulations." We are not advised by record as to the nature of this "rule"; however, it is alleged and admitted, and the testimony is, that plaintiff had made all necessary payments to, and complied with all of the rules and regulation of, the commission.

Approaching both Lincoln and Gould the highway crosses the main divide at an altitude of approximately 6,600 feet and, during the winter months, for at least a part of the time, this part of the route becomes impassable to motor vehicles and plaintiff is compelled to substitute horse-drawn vehicles. Plaintiff's time schedule over the route, approved by the commission, includes Gould and gives the time of leaving each point on the route; it recites: "June 1 to October 31st, Daily Round Trip; October 31—June 1st, Daily one way. Winter schedule cannot be shown exactly on account of road conditions." The record, however, shows that plaintiff ran as near on schedule time in the winter months as conditions permitted. The territory served by plaintiff is sparsely settled and it is clear from the record that it will not support more than one carrier operating for profit.

Plaintiff has been the permittee since August, 1926, prior to which time defendant Theodore Underseth operated the Helena-Lincoln stage line, but refused to comply with the law regulating such business (Chap. 154, Laws of 1923, as amended by Chap. 103, Laws of 1925), on the ground that his business would not justify the payment of the fees and insurance charges required, amounting to over $300 a year. The permit under which plaintiff operated during the period covered by this action was issued in April, 1928, effective for one year from date.

Plaintiff's grounds for injunctive relief, as alleged in his complaint, are that the defendants, from April 15, 1928, up to the time of the commencement of the action in August,

1928, operated four motor-trucks, without license or permit, over his route, as common carriers for hire and in the same manner as he operated and served the same portion of the public and the same points, soliciting business and exacting compensation for service; and that this was done first "by subterfuge and artifice" and later "openly and notoriously."

Defendants filed a joint answer in which they deny that they have "by subterfuge or otherwise" operated "as common carriers for hire" over the route, or have "infringed plaintiff's business as a common carrier * * * or have solicited the carriage of freight or passengers in competition with plaintiff." Reuben Underseth alleges that he has no interest in the motor-trucks operated by his two brothers. Theodore Underseth alleges that, prior to 1926 he secured an "oral permit" from the Railroad Commission to operate between Helena and Gould, which permit has never been revoked. Theodore and Carl Underseth then "admit the operation of motor-trucks in the fulfillment of private contractual obligations of your defendant, Theodore Underseth," and deny that they have transported any person or article other than in fulfillment of such obligations. In closing, the defendants "deny that plaintiff is entitled to the relief, or any part thereof, in said complaint demanded, and pray the same advantage of this answer as if they had pleaded or demurred to said complaint."

After a full hearing the court made elaborate findings of fact and conclusions of law in favor of plaintiff; the findings with reference to the acts of defendants follow the wording of the complaint summarized above. Defendants' specifications of error argued cover but the questions herein discussed.

On perfecting their appeal, without tendering a transcript of the evidence for consideration, defendants filed in this court an application for a stay of the injunction, in which they represented that the New Gould Mining Company, at Gould, in its operation required the hauling of heavy machinery, timber, lumber, high explosives and supplies, for which hauling plaintiff was not equipped; that there was no doctor at Gould

and an emergency might arise at any time requiring the immediate transportation of men injured or ill to Helena, and that defendant Theodore Underseth had a contract with the mining company to do this hauling. We called the attention of counsel for the plaintiff to this application and he frankly admitted that the commission has no authority over private carriers and that the decree here affects defendants only as common carriers; conceded that the injunction should not extend to the hauling of freight or passengers under contract with the New Gould Mining Company and agreed that the court might provide for such transportation, and none other, pending the appeal. This court thereupon issued its order staying the injunction pending appeal, in so far as it purports to interfere with the defendants' operations as private carriers pursuant to contract with the mining company and permitting the carriage of freight and passengers under such contract, but provided therein that the order should not be construed to permit the defendants to transport property or passengers for others than the mining company. A bond of $1,000 was required from the defendants, conditioned that defendants would pay all damages which plaintiff should suffer by reason of the stay. The questions raised by defendants will be treated in their logical order.

1. It is asserted that Chapter 154, Laws of 1923, provides for the administration of the Act by the Railroad Commission and that courts should not be resorted to for this purpose, at least until the matter in controversy has been "thrashed out" before the board; in other words, that an injunction will not lie in such a case as this.

While "it is within the province of the board of railroad commissioners to whom the legislature has delegated authority to administer the Act" (*Interstate Transit Co.* v. *Derr*, 71 Mont. 222, 228 Pac. 624), no adequate provision is made in the Act for meeting such a situation as faced plaintiff by an appeal to the board for relief. The board may refuse a permit to a person desiring to compete with a regularly licensed

transportation company, but it cannot prevent illegal competition and the Act (sec. 8) but provides that a violation of the Act or of the regulations of the board constitutes a misdemeanor. Prosecution under this section is not such plain, speedy and adequate remedy as to deprive a court of equity of jurisdiction to grant injunctive relief; injunction will, therefore, lie at the instance of one entitled to operate a transportation line for hire between fixed termini, to prevent a competitor operating without a license from conducting the same business over the same route. (*Willis* v. *Buck*, 81 Mont. 472, 263 Pac. 982; *Northern Pacific Ry. Co.* v. *Bennett*, 83 Mont. 483, 272 Pac. 987.)

2. Counsel for defendants assert that the Act under consideration does not apply to private carriers and that the defendants are private and not "common" carriers. Conceding the correctness of the first statement, it has no application here, if, in fact, regardless of their statement to the effect that they never intended to dedicate their equipment to the public, the defendants are common carriers.

The allegation that defendants were operating under an "oral permit" which had never been revoked is not sustained by the evidence. It appears that Theodore Underseth had a mail contract in the fall of 1924 and was then operating as a common carrier as well; he wrote the commission stating that he could not comply with the law and pay for the insurance required, and closed his letter with the inquiry: "Can you grant me an exemption from the law until June 30, 1926, at which time my contract expires?" He asserts that thereafter the "chairman of the board" in private conversation granted him the oral permit. The record discloses that no action was ever taken by the board. The chairman of the board, as such, has no authority apart from the board and his utterances, made without notice to or ratification by the board as a whole, would be wholly ineffective. (*State ex rel. Boyle* v. *Hall*, 53 Mont. 595, 165 Pac. 757.) Moreover, if the commission has power to grant an oral exemption and one was granted, its limit was fixed by the defendant and while

on the stand Theodore Underseth did not contend that he was operating under oral permit, but testified that he ceased operating as a common carrier in 1926 and has done nothing but "contract work" since.

It may be true that all of defendants' hauling was done under special contract, but, even if so, the fact would not necessarily place them in the category of private carriers; every time you secure a bill of lading or purchase a ticket entitling you to ride on a stage-coach or railroad train, you enter into a contract for transportation; the obligation to carry you or your goods is a contractual obligation.

No one will contend that a mine operator or a farmer is required to comply with the Act in question in order to carry his ore or produce to market over the public highway, and if he hires another to do this for him, his agent or employee likewise cannot be compelled, by reason of such contract, to comply with the provisions of the Act and thus dedicate his equipment to the public. A special undertaking for one man or a definite number does not render a person a common carrier (*State* v. *Nelson,* 65 Utah, 457, 42 A. L. R. 849, 238 Pac. 237; *Fish* v. *Chapman,* 2 Ga. 349, 46 Am. Dec. 393), nor does a general hiring for a single purpose (*Big Bend Auto Freight* v. *Ogers,* 148 Wash. 521, 269 Pac. 802; *Purple Truck Co.* v. *Campbell,* 119 Or. 484, 51 A. L. R. 816, 250 Pac. 213; *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570, 69 L. Ed. 445, 45 Sup. Ct. Rep. 191, 36 A. L. R. 1105), and such private carrier might, on occasion, accommodate outsiders in an emergency and accept compensation therefor without acquiring the character of a common carrier; the question of the good faith of the carrier in such a case is controlling. (*Big Bend Auto Freight* v. *Ogers,* above.)

The class to which a carrier is to be assigned depends upon the nature of his business, the character in which he holds himself out to the public, the terms of his contract, and his relations generally to the parties with whom he deals and the public. "A private carrier is one who agrees, by special agreement or contract, to transport persons or property from

one place to another, either gratuitously or for hire; one who undertakes for the transportation in a particular instance only, not making it a vocation, not holding himself out to the public ready to act for all who desire his services." "Common carriers, however, hold themselves out to carry for all persons indiscriminately." (1 Moore on Carriers, secs. 1–4.)

Holding oneself out to the public does not necessarily consist in public declarations or advertisement; the undertaking may be evidenced by the carrier's own notice or, practically, by a series of acts, by his known habitual continuance in the line of business; one who follows carrying for a livelihood or who gives out to the world in any intelligible way that he will take goods, chattels or persons for transportation for hire, is a common carrier (*Fish* v. *Chapman*, above; *Varble* v. *Bigley*, 14 Bush (Ky.), 698, 29 Am. Rep. 435); and this is so although the carrier has no fixed schedule of charges, does not operate over a definite route, does not always load his vehicle to capacity and refuses, on occasion, to accept freight or passengers whether his vehicle is engaged or not. (*Cushing* v. *White*, 101 Wash. 172, L. R. A. 1918F, 463, 172 Pac. 229.)

In determining whether a business is that of common carrier, "the important thing is what it does, not what its charter says" (*Terminal Taxicab Co.* v. *Kutz*, 241 U. S. 252, 60 L. Ed. 984, 36 Sup. Ct. Rep. 583, Ann. Cas. 1916D, 765), and owners of vehicles "should not too readily be permitted to enter into contracts, or adopt measures, which will enable them to readily evade the letter or the spirit of the statutes intended to govern them." (*Goldsworthy* v. *Public Service Commission*, 141 Md. 674, 119 Atl. 693.)

A common carrier cannot, by making contracts for future transportation, prevent or postpone the exertion by the state of the power to regulate it. (*Producers' Transportation Co.* v. *Railroad Commission*, 251 U. S. 228, 64 L. Ed. 239, 40 Sup. Ct. Rep. 131.)

The regulation of motor transportation for the protection of the public is a legitimate and wise exercise of the police

power of the state, and courts generally have not been inclined to excuse the increasing number who earn their livelihood by the use of the public highways for the transportation of persons and property for hire, from the responsibilities of common carriers on merely technical grounds, and they are particularly slow to excuse them when the plan of operation bears evidence of a studied attempt to reap the rewards of common carriers without incurring the corresponding liabilities. (*Restivo* v. *Public Service Commission,* 149 Md. 30, 129 Atl. 884; *Craig* v. *Public Utilities Commission,* 115 Ohio St. 512, 154 N. E. 795; *Davis* v. *People ex rel. Public Utilities Commission,* 79 Colo. 642, 247 Pac. 801; *Sanger* v. *Lukins,* 24 Fed. (2d) 226.)

In the case at bar the evidence fully warrants the court's findings to the effect that defendants have regularly covered the route described in plaintiff's permit for the purpose of obtaining freight and passengers for transportation for hire as a business and have so timed their trips as to secure the business in advance of plaintiff's scheduled trips; this being established as a fact, it is immaterial that their major activities and the reasons for their maintaining motor-trucks at Gould and over the route mentioned, were a mail contract and employment by the New Gould Mining Company to stand in readiness to meet any emergency that might arise at the mines and to haul heavy machinery and high explosives, for which work plaintiff was not equipped. If these major activities constitute operations as a private carrier, not subject to regulation by the commission, still, when, on trips made for the mining company, or otherwise, defendants transported passengers at the expense of those carried, whether they were employees of the company or not, or transported property of individuals for hire, not as an isolated transaction for the accommodation of the individual, but generally as a means of livelihood, their activities constituted operations as a common carrier and this is likewise the effect of calling for and transporting all shipments received at Silver Station for the mining company under written direction to the railway company,

given by the manager of the mining company, to deliver freight "to anybody who calls for it."

Defendants attempted to justify their activities on the ground that the plaintiff was not furnishing adequate service, although admitting by answer that he was; but if he was not, such fact would not justify defendants in entering into competition with him without a license to do so, but was merely the subject for a complaint to the commission as a basis for an order compelling plaintiff to furnish adequate service, or for the revocation of his license, or the granting of a license to another to compete with him.

On the evidence adduced, the finding that the defendants were common carriers is fully justified.

3. With respect to the regulation of common carriers, the constitutionality of the Act in question, attacked under the "due process" provision of the Constitution, is no longer debatable. (*Northern Pacific Ry. Co.* v. *Bennett,* above; *Willis* v. *Buck,* above; *State* v. *Johnson,* 75 Mont. 240, 243 Pac. 1073.)

4. Counsel for defendants urge that the statute and the regulations of the commission made thereunder do not apply to persons in rural communities who, only in isolated instances, carry passengers or freight for hire. The correctness of this statement of the law is granted. (*State* v. *Flagg,* 75 Mont. 424, 242 Pac. 1023.)

Subdivision (e) of section 1 of the Act under consideration provides that "the Railroad Commissioners may exempt from the operation of this Act the transportation of freight or passengers by motor vehicle in rural communities when not done on a commercial basis," which is, perhaps, a broader exemption than that urged by counsel, and we have held that this exemption is a matter of right, construing the provision as though it read "must exempt" (*State* v. *Johnson,* above), but this exemption applies only when the transporting is "not done on a commercial basis," and, therefore, neither the exemption nor the rule as to "isolated instances" aids the de-

fendants who were shown to be transporting freight and passengers for hire "on a commercial basis" for the purpose of making a livelihood and, in fact, were conducting a profitable business.

5. It is contended that the Railroad Commission has no jurisdiction over stage lines operated by horse-power or where schedules and regular service are observed but a part of the year.

As to the first, the record discloses that it is necessary to use horses and sleighs over the continental divide for an indefinite period during each winter, but the remainder of the route is, during that period, served by plaintiff's auto-trucks, and that defendants operate in the same manner. While the commission could not regulate service by horse-drawn vehicles under this Act, it cannot affect the operation of either plaintiff or defendants over the whole route during a part of the year, or over the part of the route served by motor-trucks during the whole of the year, and the mere fact that a part of the route cannot be covered by motor transportation for a part of the year cannot, under any reasonable construction of the Act, oust the commission from jurisdiction to regulate transportation by motor vehicles over the route in so far as such transportation can be maintained. Nor does such a break in motor transportation change the character of the carrier from that of a common or public carrier to that of a private carrier. "One who follows carrying for a livelihood or who gives out to the world in an intelligible way that he will take goods or other things for transportation from place to place, whether for a year, a season, or less time, is a common carrier." (*Fish* v. *Chapman,* above.)

As to the schedules filed with the commission, the only difference between plaintiff's service during the summer and winter is that he agrees to make daily round trips from June 1 to November 1, and but one-way trips the remainder of the year, and that "the winter schedule cannot be shown exactly on account of road conditions." In other words, the

plaintiff adheres to the schedule as nearly as possible at all times. The law never requires impossibilities (sec. 8760, Rev. Codes 1921), and plaintiff has agreed to do, and has done, all that could be required of him by the commission and by the public.

6. Defendants contend that the court's conclusion of law numbered one is erroneous in stating that the "defendants have no right to * * * operate motor vehicles in intrastate commerce over" plaintiff's route "as common carriers for hire, or otherwise," as, if defendants operate "otherwise" than as common carriers, they do not come within the requirements of the statute. If counsel correctly construe this conclusion, it is erroneous; but if the meaning is that defendants may not operate as common carriers in the manner stated "for hire or otherwise," the conclusion correctly states the law. The proper construction of the sentence is, however, of no importance, since the phrase to which exception is taken is not carried forward into the judgment and injunction.

7. Counsel for defendants assert that "an injunction 'perpetually and forever' enjoining and restraining defendants cannot issue, for the reason that plaintiff's right granted by plaintiff's certificate was temporary and expires within a year of the date of issuance, to wit, on April 1, 1929."

Counsel do not argue the question raised to any extent, but under this head say that the injunction is violative of the Fourteenth Amendment to the Constitution of the United States, in that it takes defendants' property without due process of law. We have already disposed of the question raised.

However, the injunction is too broad, as worded. It is perpetual in so far as the issues determined are concerned, i. e., it was proper to "forever" enjoin defendants from operating as common carriers, without a license, in competition with plaintiff operating under a valid license, but, it was not proper to make the injunction perpetual under any and all circumstances; changed conditions might render the defendants not subject to injunction. For example, while plaintiff's permit

is exclusive as to these defendants under the conditions shown in the record, section 4 of the Act declares that a permit issued "shall not be an exclusive right or license to operate over any route * * * "; on a proper showing made under the provisions of section 4 of the Act the Railroad Commission might, at any time, after the issuance of the injunction, grant to the defendants a permit to operate over the route described; the injunction should not prohibit defendants from operating under such conditions; yet it does.

Again, while a court of equity may enjoin the commission of criminal acts when such acts would result in irreparable injury to property rights, public or private, or the creation or continuance of a public nuisance (32 C. J. 277), such a court has no jurisdiction to enjoin the commission of a crime, merely as a crime, and thus substitute contempt proceedings for a constitutional trial by jury as a means of punishing future violations of a prohibitory statute (*State ex rel. Stewart* v. *District Court*, 77 Mont. 361, 49 A. L. R. 627, 251 Pac. 137). In the absence of the infringement of the rights of another, the legal remedy for the vindication of Chapter 154, Laws of 1923, is found in the Act itself, wherein any violation of its provisions, or the rules and regulations of the board lawfully established thereunder, is made a misdemeanor punishable by a fine of not less than fifty nor more than one thousand dollars (sec. 9), and this remedy is deemed fully adequate and peculiarly appropriate. (21 C. J. 155.)

The injunction prohibits defendants from violating the provisions of the Act or the rules and regulations of the commission at any time in the future and on any route, whether in competition with plaintiff or otherwise, and this exceeds the jurisdiction of the court.

8. Defendants complain that the injunction is too broad in that it prohibits them from discharging their contractual obligations as a private carrier. In this they are mistaken; the order merely restrains defendants from "operating motor vehicles" over the route described "in intrastate com-

merce" in "receiving, carrying or discharging" freight, express, passengers or baggage to or from the points mentioned, over the highways extending between the termini, and "from violating or attempting to violate the provisions of Chapter 154, Laws of 1923." "Commerce," as the term is used in this connection, means "business intercourse" (Webster); commercial intercourse on a business basis (*United States* v. *Patterson*, 55 Fed. 605), including the transportation of passengers and property by *common carrier* (*In re Second Employers' Liability Case*, 223 U. S. 1, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 38 L. R. A. (n. s.) 44; *Welton* v. *Missouri*, 91 U. S. 275, 23 L. Ed 347; *Corporation Commission* v. *Cannon Mfg. Co.*, 185 N. C. 17, 116 S. E. 178). "Transportation is essential to commerce, or, rather, it is commerce itself." (Justice Strong in *Hannibal & St. Jo. R. R. Co.* v. *Husen*, 95 U. S. 470, 24 L. Ed. 527.)

In the order made, defendants are but enjoined from carrying on the business of transporting passengers and property over a definite route within the state "in intrastate commerce," ergo: as a common carrier.

For the reasons stated, the cause is remanded to the district court of Lewis and Clark county with direction to modify the judgment by striking from the injunctive portion thereof the final clause reading "and from in any manner violating or attempting to violate the provisions of Chapter 154, Laws of 1923, of the State of Montana, as amended, and the rules and regulations of the Board of Railroad Commissioners of the State of Montana lawfully established pursuant thereto," and by substituting therefor: "while the plaintiff is the holder of a valid permit to operate over such route and the defendants are not," and as modified the judgment will be affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.